601 F.2d 261
 Linda Kay SPARKMAN and Leo Sparkman, Plaintiffs-Appellants,
v.
Ora E. McFARLIN, Warren G. Sunday, Harold D. Stump,
Individually and as Judge of the Circuit Court of DeKalb
County, Indiana, John H. Hines, M.D., John C. Harvey, M.D.,
Harry M. Covell, M.D., and DeKalb Memorial Hospital, Inc., a
corporation, Defendants-Appellees.
 No. 76-1706.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 11, 1978.
Decided May 2, 1979.
 
 Richard H. Finley, Kendallville, Ind., Marjorie Press Lindbloom, Kirkland & Ellis, Chicago, Ill., for plaintiffs-appellants.
 Carl J. Suedhoff, Jr., George E. Fruechtenicht, J. A. Bruggeman, and William F. McNagny, Fort Wayne, Ind., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER and WOOD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Linda Kay Sparkman brought this damage action pursuant to 42 U.S.C. § 1983 alleging that the defendants acted "in concert" to deprive her of her constitutional rights by sterilizing her without her knowledge or consent. Named as defendants were her mother, the mother's attorney who drafted the petition to sterilize, the state court judge who approved the petition to have a tubal ligation performed, the three doctors who performed or assisted in the sterilization, and the hospital where the surgery was performed. The plaintiff and her husband also asserted pendent state claims for medical malpractice, assault and battery, and for loss by the husband of potential fatherhood.
 
 
 2
 The district court dismissed the complaint against the state court judge, finding him absolutely immune under the doctrine of judicial immunity. Inasmuch as the plaintiffs sought to hold the private defendants liable on a theory that they conspired with the judge to bring about the allegedly unconstitutional acts, the district court held that the judge being immune, and no other state action being properly alleged, the constitutional claims against the other defendants should also be dismissed. The remaining pendent state claims were dismissed for lack of subject matter jurisdiction. Sparkman v. McFarlin, Civ.No. F 75-129 (N.D.Ind., May 13, 1976).
 
 
 3
 On appeal, this court reversed the judgment of the district court, holding that the state court judge had acted extrajudicially and that he was not entitled to immunity, and thereby this court revitalized the claims against all the defendants. Sparkman v. McFarlin, 552 F.2d 172 (7th Cir. 1977).
 
 
 4
 The Supreme Court, concluding that a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather that he will be subject to liability only when he has acted in clear absence of all jurisdiction, determined that the state court judge was vested by Indiana law with the power to entertain and act upon the petition for sterilization and that he was therefore entitled to the benefits of judicial immunity. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Accordingly, the judgment of this court was reversed, and the case was remanded for further proceedings. The Supreme Court said that "we do not decide whether the District Court correctly concluded that the federal claims against the other defendants were required to be dismissed if Judge Stump, the only state agent, was found to be absolutely immune." Id. at 364 n. 13, 98 S.Ct. at 1109 where the Court noted a conflict among the circuits.
 
 
 5
 Upon remand, under our Circuit Rule 19, all parties have briefed the issue left undecided by the Supreme Court. The defendants seek a Per se rule that "no cause of action is stated against private persons for alleged conspiracies with immune state officials, since such private persons are not conspiring with persons acting under color of state law against whom a valid claim could be stated." Conversely the plaintiffs advance the theory that when private persons act in concert with an immune state official they are subject to liability provided only that a deprivation of rights has occurred.
 
 
 6
 The judges in regular active service have voted to hear this issue In banc in lieu of consideration by a single panel. The majority of judges in regular active service affirms the judgment of the district court.
 
 
 7
 FAIRCHILD, Chief Judge, concurring.
 
 
 8
 I concur with Judge Tone, and would add only the following observation.
 
 
 9
 In most judicial decisions the judge "agrees" with one or more parties and their counsel. Thus it is easy for a state court loser to fulfill, superficially, the agreement element of conspiracy. Ingenious counsel can readily spell out a claim that a state judicial decision impairs a right that is constitutionally beyond the power of the state or impairs a liberty or property interest without due process. Then the wrongful object element is seemingly fulfilled.
 
 
 10
 As noted by Judge Sprecher, there is a strong policy reason against lower federal court review of state court proceedings. For this reason, I would build into any principle for the recognition of a § 1983 claim based on a private person's conspiracy with a state judge, a requirement of pleading and proof not only that the private party used the state court proceedings to produce a constitutional wrong, but that there was agreement between the party and judge beyond ordinary request and persuasion by the prevailing party, and that the state court judge invidiously used his office to deprive the § 1983 plaintiff of a federally protected right. See Adkins v. Underwood, 520 F.2d 890, 893 (7th Cir. 1975).
 
 
 11
 PELL, Circuit Judge, concurring.
 
 
 12
 I concur in the affirmance in this case because of the lack of requisite particularity in the allegations of conspiracy.
 
 
 13
 On the pleadings in this case the district court judgment is properly affirmed without any necessity of reaching the issue as to whether under other circumstances there may be a situation where private persons may be held liable under 42 U.S.C. § 1983 even though the only state action was through a person entitled to immunity. Whether or not there should be a Per se rule of no liability as to the private persons in such a situation should be deferred for decision until the issue is before us. It is not now.
 
 
 14
 BAUER, Circuit Judge, joins in Circuit Judge PELL's concurrence.
 
 
 15
 SPRECHER, Circuit Judge, concurring.
 
 
 16
 I concur in the result reached by a majority of the court for the reason that I believe that a private person may become liable under 42 U.S.C. § 1983, although the judge is absolutely immune, if alleged and proved to have conspired with a state judge performing a judicial act to deprive the plaintiff of constitutional rights provided that the conspiracy is alleged with particularity.
 
 
 17
 * In Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), a white school teacher sued under 42 U.S.C. § 1983 for the defendant's refusal to serve lunch in its restaurant facilities to her while she was in the company of six of her black students and for her arrest upon departure by the Hattiesburg police on a charge of vagrancy. The plaintiff alleged that the defendant and the Hattiesburg police had conspired to deprive her of constitutional rights. The district court entered summary judgment for the defendant on the conspiracy count and the Second Circuit Court of Appeals affirmed.
 
 
 18
 In reversing the court of appeals, the Supreme Court under the heading of "Conspiracies Between Public Officials and Private Persons Governing Principles," first set forth the elements necessary for a section 1983[1] recovery at 150, 90 S.Ct. at 1604:
 
 
 19
 The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."
 
 
 20
 See also Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).
 
 
 21
 The Court concluded that the plaintiff would be entitled to relief "if she can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding" to deny service in the restaurant or to cause her subsequent arrest, saying:
 
 
 22
 The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); see United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); Screws v. United States, 325 U.S. 91, 107-111, 65 S.Ct. 1031, 1038-1040, 89 L.Ed. 1495 (1945); Williams v. United States, 341 U.S. 97, 99-100, 71 S.Ct. 576, 578-579, 95 L.Ed. 774 (1951). Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).[2]
 
 
 23
 In holding that it was error to grant summary judgment on the conspiracy count, the Court determined that "(r)espondent here did not carry its burden because of its failure to foreclose the possibility that there was a policeman in the Kress store while petitioner was awaiting service, and that this policeman reached an understanding with some Kress employee that petitioner not be served." Id. 398 U.S. at 157, 90 S.Ct. at 1608. The Court again repeated that the fact to be alleged and proved was "that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service." Id. at 158, 90 S.Ct. at 1609.
 
 
 24
 The first element necessary for a recovery under § 1983 is the allegation and proof of the deprivation of a constitutional right. In view of our ultimate determination that the second element, "under color of law," has not been properly alleged, we need not reach the question of whether a constitutional deprivation has been alleged.[3]
 
 
 25
 The second element necessary for a recovery under § 1983 is the allegation of acts performed either under color of law or as state action. Private institutions and private persons, without more, obviously do not expose themselves to § 1983 liability. In order to become liable, they must be shown to have some "nexus" or connection with the state, one of its governmental entities, or a state official. We have recently explored the nexus needed to be shown and concluded that a private institution must be receiving state affirmative support, acting as a state instrumentality or as a joint participant with a state, or performing a traditionally sovereign function. Batt v. Marion Heights, Inc., 586 F.2d 59 (7th Cir. 1978).
 
 
 26
 Private persons must either be involved in a conspiracy with, jointly engaged with, or a willful participant in joint activity with a state or its official in order to be exposed to § 1983 liability. The specific nexus required in Adickes was that the private party "reached an understanding" through a meeting of the minds with the police officer.
 
 II
 
 27
 A large number of court of appeals cases hold simply, and without any extended discussion, that a private person alleged to have conspired with a state judge who is entitled to immunity cannot be held liable since the private person did not conspire with persons acting under color of law against whom a valid claim could be stated.[4] Several other court of appeals cases reject the Per se rule that a conspiracy cannot exist between private persons and immune judges or court officials.[5] Most of these cases place heavy reliance upon Adickes and Price.
 
 
 28
 The Seventh Circuit has in the past often avoided establishing either a Per se rule that no claim can ever be stated against private parties alleged to have conspired with immune judicial officials or the Per se rule that a conclusory allegation of conspiracy is sufficient in itself to save a complaint from dismissal. The following cases all involved the affirmance of the dismissal of a civil rights claim, involving for the most part immune judges or judicial officers, for failure to allege the conspiracy with sufficient specificity:
 
 
 29
 Davis v. Foreman, 251 F.2d 421, 422 (7th Cir.), Cert. denied, 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1148 (1958) ("The Civil Rights Act does not protect one from invasion of private rights by individual action . . . unless two or more persons conspire . . .. (T)he complaint totally fails to allege any facts which would confer jurisdiction . . ..").
 
 
 30
 Johnson v. Stone, 268 F.2d 803, 804 (7th Cir. 1959) ("She also complains that defendants conspired . . .. Her factual allegations do not support her conclusory statements.").
 
 
 31
 Duzynski v. Nosal, 324 F.2d 924, 926, 931 (7th Cir. 1963) ("It is alleged that these lay defendants engaged in a conspiracy . . .. The complaint, when stripped of its conclusory and irrelevant allegations, taken in connection with the exhibits attached to it, in our judgment states no action upon which relief could be granted . . ..").
 
 
 32
 Kamsler v. Zaslawsky, 355 F.2d 526, 527 (7th Cir. 1966) ("Plaintiff sets out no facts in his complaint on which to base his conclusory statements . . .. He lists alleged improprieties . . . and attributes these to a conspiracy between defendants and unnamed public officials, no further details being given.").
 
 
 33
 Dieu v. Norton, 411 F.2d 761, 763 (7th Cir. 1969). ("Assuming, arguendo, that plaintiff is attempting to allege an actionable conspiracy within the reach of § 1983, Supra, the complaint must fall. At best, the complaint does nothing more 'than merely state vague and conclusory allegations respecting the existence of a conspiracy' without showing any 'overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.' ").
 
 
 34
 The latest Seventh Circuit cases affirming the dismissal of § 1983 cases alleging conspiracies between private persons and immune state court judges or judicial officials can likewise be correlated and synthesized if in each case the alternative ground of lack of particularity in pleading the conspiracy is accepted as the decisive ground.
 
 
 35
 In French v. Corrigan, 432 F.2d 1211 (7th Cir. 1970), Cert. denied, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971), after setting forth the conclusory conspiracy allegation, the court said that "(o)bviously, this allegation is conclusory and of no aid to plaintiff absent allegations as to the acts committed by defendants in pursuance of the alleged conspiracy." Id. at 1213.
 
 
 36
 In Hansen v. Ahlgrimm, 520 F.2d 768 (7th Cir. 1975), the court said:
 
 
 37
 Plaintiff, through conclusory allegations, sought to avoid this result by asserting that defendant Brown acted "in concert" with Judge Ahlgrimm, concededly a state official, presumably by seeking the complained of Order to Show Cause and the issuance of the arrest warrant for failure to comply. . . .
 
 
 38
 In view of the ordinary contacts of counsel and court incident to litigation, it may be questioned whether these allegations are sufficiently specific to constitute a claim of actionable conspiracy for the purpose of 42 U.S.C. § 1983. At most, the complaint does no more than " 'merely state vague and conclusionary allegations respecting the existence of a conspiracy' without showing any 'overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.' " (Citing the Dieu case, Supra.)
 
 
 39
 Id. at 770.
 
 
 40
 Finally in Grow v. Fisher, 523 F.2d 875, 879 (7th Cir. 1975), we said:
 
 
 41
 In sum, we conclude that entirely apart from Fisher's immunity, the simple conclusionary allegation that various private torts were committed "in concert" with a state official was not sufficient to cause the private tort-feasors to be acting under color of state law, nor was there any showing that the individuals violated any constitutional rights of the plaintiff.
 
 
 42
 Other Seventh Circuit cases affirming the dismissal of § 1983 cases seeking to allege conspiracies between private parties and immune judges were based on the failure of the plaintiff to allege any deprivation of constitutional rights and did not reach the issue of properly pleading the conspiracy. Campo v. Niemeyer, 182 F.2d 115 (7th Cir. 1950); Johnson v. Stone, 268 F.2d 803 (7th Cir. 1959); Meier v. State Farm Mutual Automobile Insurance Co., 356 F.2d 504 (7th Cir.) Cert. denied, 385 U.S. 875, 87 S.Ct. 151, 17 L.Ed.2d 102 (1966); Brown v. Dunne, 409 F.2d 341, 344 (7th Cir. 1969); Jones v. Jones, 410 F.2d 365 (7th Cir. 1969), Cert. denied, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970).
 
 
 43
 Aside from one or two references in Seventh Circuit cases which seem to approve the Per se rule that a private person cannot be held liable for conspiring with immune judges,[6] this circuit has disposed of the issue upon the requisite particularity in alleging a conspiracy without the necessity of a firm commitment to the Per se rule. To the small extent that such commitment exists, I would disavow it. The conferral of immunity upon the judge-defendant does not destroy the judicial state action which the judge may have performed. See generally Robinson v. Bergstrom, 579 F.2d 401, 404 (7th Cir. 1978) (State action issue addressed prior to immunity issue). If the factual particulars of a conspiracy can be alleged, private persons may be exposed to § 1983 liability by conspiring with absolutely immune judges.
 
 
 44
 This insistence on some factual pleading to support the alleged conspiracy is consistent with this circuit's well-established rule that facts must also support the closely related allegation of state action, notwithstanding any conspiracy, under § 1983. In Cohen v. Illinois Institute of Technology, 524 F.2d 818 (7th Cir. 1975), Cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), Judge (now Justice) Stevens, in considering the proper pleading of an institutional nexus, said
 
 
 45
 The facts set forth in the complaint do not support the conclusion that defendants acted under color of state law in their discrimination against plaintiff. Nevertheless, plaintiff argues that since she has alleged the necessary ultimate conclusion in the language of the statute, the complaint should not be dismissed before she has completed discovery which may reveal some nexus between the State of Illinois and defendants' wrongful conduct. . . .
 
 
 46
 We agree that plaintiff is entitled to the fullest opportunity to adduce evidence in support of her claim. But she is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which she has not made.
 
 
 47
 Id. at 827. See also Batt v. Marion Heights, 586 F.2d 59 (7th Cir. 1978). A mere conclusory allegation of conspiracy, as for "state action," does not satisfy the command of Fed.R.Civ.P. 8(a)(2) that the plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief . . .."[7]
 
 III
 
 48
 The Seventh Circuit approach of avoiding a Per se rule either for or against private party-immune judge conspiracies seems to satisfy most of the policy considerations which motivate both Per se rules. There are several policy arguments which can be relied upon to prevent recovery for conspiracies with immune officials.
 
 
 49
 The first is that frivolous civil rights actions should be discouraged. Second, the federal courts, under the guise of civil rights, should not monitor and furnish a remedy for each losing party in every state court proceeding, particularly when the state merely furnishes the forum, has no interest in the outcome, and the state judge does no more than preside over a case presented to him by performing discretionary acts, judicial functions and the normal duties of his office. Third, private persons who are victims of, or witnesses to, a crime should not be discouraged from reporting the crime or from following the advice of a prosecuting attorney as to whether to lodge a formal complaint against, or to appear as a witness against, the perpetrator. Similarly, in civil matters, private persons should not be discouraged from or penalized for seeking the aid or judicial approval of a court before embarking upon activities of ambiguous legality. This is particularly important since it can be presumed that if the action is unconstitutional the judge will be more likely to prevent it than the individual engaging in self-help will be to refrain from engaging in it. Fourth, permitting conspiracies to be claimed which include immune judges may expose a judge to the time-consuming effort and chilling effect of submission to discovery and the appearance as a witness. Finally, if a judge condones a particular course of conduct, it seems manifestly unfair that the judicial expert should be immunized from attack but that the untutored lay person should be vulnerable to costly attack for participating in the same activity as the judge.
 
 
 50
 There are of course other policy arguments favoring recovery from private co-conspirators. If a judge should, for example, accept a bribe for performing a judicial act which deprives a person of constitutional rights or should reach an express understanding with another person to violate the constitutional rights of a third person, a remedy should exist against the briber or conspirator regardless of the judge's immunity. It would be illogical to dispense immunity to state actors and then extend that immunity to private persons conspiring with them, narrowing civil rights relief to direct state action only. Civil rights cases should be disposed of by case-to-case attention and not swept away by broad Per se immunity. If in any particular case competing policy considerations exist, the federal court should be able to balance all such considerations in reaching its result.
 
 
 51
 The Seventh Circuit rule discussed in Part II is flexible enough to accommodate and mediate all of the policy considerations on both sides of the question. By adhering to a fairly strict standard for pleading and proving a conspiracy, the rule prevents the chilling of judicial or private action caused by the time and expense of defending frivolous suits, and restricts liability to those situations where a competing interest the need to vindicate violated constitutional rights clearly exists.
 
 IV
 
 52
 There can be no question that all the defendants here, except the judge, could not themselves be considered to be state actors. The attorney who drafted the petition for authorization to sterilize the plaintiff was not thereby acting under color of state law within the meaning of the Civil Rights Act. Dieu v. Norton, 411 F.2d 761, 763 (7th Cir. 1969); Jones v. Jones, 410 F.2d 365, 366 (7th Cir. 1969), Cert. denied, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970); Meier v. State Farm Mutual Automobile Insurance Co., 356 F.2d 504, 505 (7th Cir.), Cert. denied, 385 U.S. 875, 87 S.Ct. 151, 17 L.Ed.2d 102 (1966); Sarelas v. Porikos, 320 F.2d 827, 828 (7th Cir. 1963), Cert. denied, 375 U.S. 985, 84 S.Ct. 519, 11 L.Ed.2d 473 (1964); Skolnick v. Martin, 317 F.2d 855, 856-57 (7th Cir.), Cert. denied, 375 U.S. 908, 84 S.Ct. 199, 11 L.Ed.2d 146 (1963). Further, there are no allegations in the complaint that the hospital or three defendant doctors who performed or assisted in the sterilization were state actors. Cf. Downs v. Sawtelle, 574 F.2d 1, 6-10 (1st Cir. 1978). Nor was the plaintiff's mother alleged to be a state actor. The only state actor in this array of defendants was the immunized judge. This status was unequivocally established by the Supreme Court's holding that the sterilization petition was a judicial act. Thus, if any of the other defendants are liable under § 1983 it can only be by virtue of having engaged in a conspiracy with the judge, or more specifically, by having "reached an understanding" with the judge to engage in a course of action that would deprive the plaintiff of her constitutional rights. See Adickes v. S. H. Kress & Co., 398 U.S. at 152, 90 S.Ct. 1598.
 
 
 53
 The complaint contained 33 numbered paragraphs. One paragraph alleged that the actions of the defendants "in concert and with the common goal and result of sterilizing" the plaintiff, deprived her of her constitutional rights.[8] Two other paragraphs alleged that the doctor who performed the sterilization operation did so "with the knowledge, approval, acquiescence, aid and assistance of each of the other defendants."[9]
 
 
 54
 Under the cases discussed in Part II, this was insufficient. It is not sufficient to allege that the defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting such a "meeting of the minds." The complaint here obviously does not meet these requirements.
 
 
 55
 TONE, Circuit Judge, concurring.
 
 
 56
 I concur in the judgment.
 
 
 57
 Our holding is necessarily only that a claim under § 1983 is not made out by the allegations of fact in the complaint with respect to a conspiracy between Judge Stump and the other parties. Those allegations are, in effect, that the judge, in the exercise of what the Supreme Court has held to be judicial authority, "approved" a petition presented to him; that the mother and her attorney invoked the exercise of that authority by presenting the petition; and that the physicians and the hospital carried out the tubal ligation after Judge Stump had "approved" the petition. There are no allegations that the judge's action, however misguided, was not disinterested: it is not alleged that he met with the other defendants to plan the events that brought about the sterilization or otherwise did anything more than commit an egregious error in law and in judgment while acting in his capacity as a judge. A private person does not conspire with a judge merely by invoking an exercise of the judge's judicial authority or merely by taking action which a judge exercising such authority has purported to "approve."
 
 
 58
 The liberal rules of federal pleading, to which the dissent appeals, are beside the point, because, as I understand the concession made by plaintiffs' counsel at oral argument, they did not and do not intend to allege any facts in addition to those just summarized.* The allegation that all the defendants conspired together to deprive Linda Sparkman of her constitutional rights must be read in the light of this concession. As to Judge Stump, that allegation is intended to say no more than that his action in entering the order was so gross a departure from recognized legal principles that it amounted to a reckless disregard of Linda Sparkman's constitutional rights. Thus plaintiffs can prove no more than an egregiously erroneous but disinterested judicial ruling. A remand to allow amendment would therefore be pointless.
 
 
 59
 I concur also in the Chief Judge's concurring opinion.
 
 
 60
 SWYGERT, Circuit Judge, with whom CUMMINGS and HARLINGTON WOOD, Jr., Circuit Judges, join, dissenting.
 
 
 61
 The district court's judgment dismissing plaintiffs' complaint should be reversed. The majority of the En banc panel has joined in a Per curiam opinion which simply affirms the district court's dismissal of plaintiffs' complaint. The reasoning supporting this result is supplied by the concurring opinions written by the judges in the majority. These concurring opinions are in agreement that plaintiffs failed to allege sufficient facts to support their conspiracy claims under 42 U.S.C. § 1983, and that for this reason the judgment of the district court should be affirmed. Judge Sprecher also concluded that "a private person may become liable under 42 U.S.C. § 1983 . . . if alleged and proved to have conspired with a state judge performing a judicial act to deprive the plaintiff of constitutional rights, . . . although the judge is absolutely immune, . . . provided that the conspiracy is alleged with particularity." Supra, 263. The other four judges in the majority expressly reserved judgment on this issue. Because I think that the district court's judgment should be reversed, I necessarily reach both issues.
 
 
 62
 The first portion of this opinion supports the conclusion that private persons may be exposed to liability under 42 U.S.C. § 1983 by conspiring with absolutely immune judges. The second half of this opinion sets out my disagreement with the plurality's[1] formulation of a new, more stringent pleading requirement applicable only to civil rights complaints alleging a conspiracy between private persons and immune judicial officials.
 
 
 63
 * A.
 
 
 64
 A cause of action under 42 U.S.C. § 1983 is stated only if a plaintiff alleges both that a defendant's action is "under color of any statute, ordinance, regulation, custom, or usage, of any State" and that the action subjects the plaintiff "to the deprivation of any rights . . . secured by the Constitution and laws" of the United States. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185, 189 (1978); Sterling v. Village of Maywood, 579 F.2d 1350, 1353 n. 6 (7th Cir. 1978). When a conspiracy is charged under section 1983, a plaintiff also must allege that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy. Hoffman v. Halden, 268 F.2d 280, 292-94 (9th Cir. 1959). Defendants do not contest that irrevocably terminating plaintiff's ability to bear children without her consent constitutes a deprivation of a fundamental constitutional right.[2] See Downs v. Sawtelle, 574 F.2d 1 (1st Cir.), Cert. denied, --- U.S. ----, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978); Cox v. Stanton, 529 F.2d 47 (4th Cir. 1975). They do assert, however, that because they are citizens holding no official capacity they cannot be regarded as having acted "under color" of state law.
 
 
 65
 It is now axiomatic that the commands of section one of the Fourteenth Amendment and 42 U.S.C. § 1983 are addressed only to the states and to those acting under color of their authority.[3] Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). "That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). It is equally settled, however, that private persons are acting under color of law and may be sued under section 1983 when they conspire or participate in joint activity with state officials in prohibited conduct. Colaizzi v. Walker, 542 F.2d 969 (7th Cir. 1976), Cert. denied, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); Potenza v. Schoessling, 541 F.2d 670 (7th Cir. 1976) (Per curiam ); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959). Cf. United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) (private persons held criminally responsible for the substantive offense of 18 U.S.C. § 242, the criminal analogue of section 1983, when they are "willful participant(s) in joint activity with the State or its agents"). Indeed, the presence of a state official as a party defendant is not even needed for a successful section 1983 conspiracy claim. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Defendants argue that even though a state official need not be joined in a section 1983 conspiracy suit, a complaint against private persons who have conspired with the immune official fails to state a claim because the absolute immunity of the state official somehow destroys the requisite state action.
 
 
 66
 Defendants cite authority from several circuits,[4] including this circuit, for the proposition that no claim is stated against private persons for alleged conspiracies with immune officials. These decisions, however, give very little consideration, if any, to the proposition.[5] Other recent decisions have questioned the wisdom of their conclusion, See, e. g., Grow v. Fisher, 523 F.2d 875 (7th Cir. 1975); Hodas v. Lindsay, 431 F.Supp. 637 (S.D.N.Y.1977), and indeed, the First Circuit recently has repudiated it altogether. See Downs, supra ; Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1 (1st Cir. 1976). Under the circumstances, I believe that a careful examination of the question is warranted, and I concur in Judge Sprecher's conclusion that a conspiracy between an immune state official and private persons to violate constitutional rights is actionable under section 1983.
 
 
 67
 A rule disallowing claims against private persons under such circumstances apparently is based on the theory that because the state official has a defense of immunity, the requisite under color of state law basis of a section 1983 action is eliminated. See, e. g., Briley v. State of California, 564 F.2d 849, 858 n. 10 (9th Cir. 1977). As stated in Haldane v. Chagnon, 345 F.2d 601 (9th Cir.), a seminal case in this area and the authority most frequently cited:
 
 
 68
 With the elimination of the defendant judges and bailiff from the case (because of immunity), claims under the Civil Rights Act cannot be stated. The attorneys were not State officers, and they did not act in conspiracy with a State officer against whom (plaintiff) could state a valid claim. It follows that they did not, and could not, commit the alleged wrongful acts "under color of state law or authority"; hence, they are not subject to liability under the Civil Rights Act.
 
 
 69
 Id. at 604-05 (citations omitted). The predicate for this holding is the fact that the plaintiff could not state a claim against the immune officers. But it has been settled at least since Adickes, supra, that a plaintiff need not even join the state official in a section 1983 conspiracy action. If he need not be joined, it is difficult to comprehend why it should make any difference that the state officer because of other, special considerations cannot be joined. As the Court stated in Adickes:
 
 
 70
 The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); See United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); Screws v. United States, 325 U.S. 91, 107-111, 65 S.Ct. 1031, 1038-1040, 89 L.Ed. 1495 (1945); Williams v. United States, 341 U.S. 97, 99-100, 71 S.Ct. 576, 578, 579, 95 L.Ed. 774 (1951).
 
 
 71
 398 U.S. at 152, 90 S.Ct. at 1605. Similarly, "(t)he judge who abuse(d) his power is still acting under color of law; he escapes damages liability only in order that his more conscientious brethren may do their jobs in peace." Slotnick v. Staviskey, 560 F.2d 31, 33 n. 1 (1st Cir. 1977).
 
 
 72
 The courts have confused immunity with state action. These concepts are entirely distinct, as this court recently noted in Robinson v. Bergstrom, 579 F.2d 401, 404 (7th Cir. 1978) (Per curiam ):
 
 
 73
 There appears to be no question that the requirement of "state action" in a section 1983 claim is an essential jurisdictional predicate. Accordingly, where state action is found lacking, the section 1983 complaint is properly dismissed for lack of subject matter jurisdiction. Alternatively a question of whether a defendant is immune, either qualifiedly or absolutely, is not a jurisdictional issue. Rather, immunity is an affirmative defense which may defeat the section 1983 claim once that subject matter jurisdiction has been established. (citations omitted).
 
 
 74
 Accordingly, this court in Robinson decided the question whether there was any state action Before it considered the immunity question. Reaching the latter question therefore necessarily presumes an affirmative answer to the former.
 
 
 75
 It cannot seriously be doubted that what the state court judge did in this case constituted state action.[6] By acting in his official capacity, the judge was clothed with the state's authority, and he was so clothed "whether or not the actions . . . were officially authorized, or lawful." Adickes, supra, 398 U.S. at 152, 90 S.Ct. at 1605. But for his approval of the petition, plaintiff would not have been sterilized. Clearly, such direct state involvement provides the necessary color of law requirement of section 1983.
 
 
 76
 Moreover, by the mere fact that judicial immunity can be said to exist, state action must also exist. As the Supreme Court said in this case, a judge enjoys absolute immunity unless he acts in "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Thus, if he enjoys immunity for his acts, those acts must have been taken under at least some semblance of jurisdiction, and "under color" of law. Indeed, if the judge's acts were not under color of state law, subject matter jurisdiction would have been lacking and there would have been no need to reach the question of immunity. The Supreme Court indicated as much when it held that Judge Stump was immune from damages even if his approval of the petition was in error because "Indiana law vested in Judge Stump the power to entertain and act upon the petition for sterilization." Id. at 364, 98 S.Ct. at 1108. By utilizing that power, he was acting under color of state law, even though immune.
 
 
 77
 My view that there is state action irrespective of an official's immunity is supported by the limited nature of judicial immunity. Judges are immune only from damage liability; their immunity does not extend to criminal liability. O'Shea v. Littleton, 414 U.S. 488, 503, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), or to declaratory or injunctive relief, Hansen v. Ahlgrimm, 520 F.2d 768, 769 (7th Cir. 1975); Mudd v. Busse, 68 F.R.D. 522, 531 (N.D.Ind.1975), where state action is also a prerequisite. United States v. Price, supra, 383 U.S. at 792 n. 5, 86 S.Ct. 1152. It would strain reason to hold that there is state action sufficient to make a judge and his private coconspirators criminally and equitably liable, but there is no state action for the same conduct when damages are sought. On the basis of the foregoing, I can only agree with the First Circuit, which held:
 
 
 78
 It is thus plain that once the requisite showing of concerted action is made, and assuming that some colorable constitutional deprivation is made out, the injured party has an independent cause of action for damages against the private party involved. The ultimate destiny of the private party can in no way be said to depend upon the status of the official with whom he conspired or upon the defense available to that official. The concerted action which permits a finding of state action cannot simply be erased by the absence of the state actor as a defendant or by the fact that the state actor might later raise a successful defense to the plaintiff's claim.
 
 
 79
 Downs, supra, 574 F.2d at 15.
 
 B.
 
 80
 The conclusion that there was state action here does not complete the analysis. It also must be determined whether Congress intended section 1983 to reach private conspirators even though the state actor with whom they conspired is immune. Resolution of that question, essentially a matter of statutory construction, requires a determination of whether the policies underlying official immunities make inappropriate section 1983 actions against private persons who conspire with immune officials to deprive another of his rights in short, whether immunity also should be extended to the private persons.
 
 
 81
 The Supreme Court has held that section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Under limited circumstances, however, public officials have been given immunity from damage liability. The rule is tolerated not because corrupt or malicious public officials should be immune from suit, but solely because it is recognized that certain officials in whom discretion is entrusted must be able to exercise that discretion vigorously and effectively without fear that they will be subjected to burdensome and vexatious litigation. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[7] In determining whether and to what extent immunity should be granted in a given situation, courts have adopted a two-fold analysis: examination into the immunity accorded at common law and inquiry into the policy considerations supporting that immunity. Imbler v. Pachtman, 424 U.S. 409, 421, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). See also Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978); Robinson v. Bergstrom, 579 F.2d 401 (7th Cir. 1978) (Per curiam ).
 
 
 82
 There is no history of common law immunity afforded private persons who conspire with judges or other state officers to misuse the judicial process. Nor are there any policy considerations that dictate that such private persons should be afforded immunity, absolute or otherwise. As noted by the First Circuit in Downs, supra, private persons simply are not confronted with the pressures of office, the task of decision making, or the threat of civil litigation for allegedly erroneous official decisions. Id., 574 F.2d at 15. Private persons are not required, as are judges, to make decisions. Citizens are free not to act at all. In short, there are no policy considerations that override the maxim that a person is responsible for the natural consequences of his actions.[8]
 
 
 83
 Nor would the purposes of judicial immunity be undermined by allowing damage actions against private persons who conspire with immune judges. Such suits will not have a chilling effect on a judge's inquiry. Judges will remain free to perform their duties with independence and without fear of consequences. They will remain free from the threat of suits influencing their decisions; similarly, they will be free from the time and expense of defending such suits.[9]
 
 
 84
 There is nothing novel in holding coconspirators liable even though a fellow conspirator is immune. Conspiracy prosecutions have been allowed to proceed in a variety of contexts notwithstanding the fact that some or all of the coconspirators are immune.[10] For example, in Farnsworth v. Zerbst, 98 F.2d 541 (5th Cir. 1938), Cert. denied, 307 U.S. 642, 59 S.Ct. 1046, 83 L.Ed. 1523 (1939), a conspiracy conviction was affirmed even though the coconspirator enjoyed diplomatic immunity.[11] Cf. United States v. Lester, 363 F.2d 68 (6th Cir. 1966), Cert. denied, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967). Similarly, in Ewald v. Lane, 70 App.D.C. 89, 104 F.2d 222, Cert. denied, 308 U.S. 568, 60 S.Ct. 81, 84 L.Ed. 477 (1939), a wife was allowed to proceed against two coconspirators even though a third, her husband, was dismissed from the case because of interspousal immunity.[12]
 
 
 85
 Nor is there anything fundamentally unfair in holding private persons liable in such circumstances. They, as alleged coconspirators, actively deprived a plaintiff of his constitutional rights. To extend immunity to them simply because the state official is immune creates a windfall defense for those who conspire to deprive citizens of their constitutional rights. In any event, "(w)hatever factors of policy and fairness militate in favor of extending some immunity to private parties acting in concert with state officials were resolved by Congress in favor of those who claim a deprivation of constitutional rights." Downs, supra, 574 F.2d at 15-16.
 
 II
 
 86
 The five concurring judges have voted to affirm the district court's dismissal of plaintiffs' complaint, each holding that plaintiffs have failed to state sufficient factual allegations in the conspiracy counts of their complaint. This precipitous termination of the Sparkmans' case is unwarranted.
 
 
 87
 The question whether plaintiffs stated their civil rights claims with sufficient particularity was never ruled on by the district judge.[13] The issue neither was briefed on appeal to this court nor raised in the briefs filed subsequent to the Supreme Court decision in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Only at oral argument En banc and presumably without notice to plaintiffs did defendants raise the pleading issue. Nonetheless, the plurality has taken the opportunity to develop and apply a new and unsupportable pleading requirement for civil rights conspiracy claims.
 
 
 88
 It is difficult to discern the precise contours of the plurality's new pleading requirement.[14] The plurality opinion never says that it is imposing a stricter pleading threshold than that required by the Federal Rules of Civil Procedure; in fact, the plurality opinion cites Rule 8(a)(2) saying, "A mere conclusory allegation of conspiracy, as for 'state action,' does not satisfy the command of Fed.R.Civ.P. 8(a)(2) that the plaintiff plead 'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . ." Supra, p. 267. An analysis of the Federal Rules of Civil Procedure and the decisions interpreting them suggests, however, that the plurality has applied a new and more demanding pleading requirement. Only a pleading requirement much stricter than that mandated by the Federal Rules could have led to the result reached here dismissal of plaintiffs' case.
 
 
 89
 The degree of particularity required in the allegations of a complaint is measured by Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The essential purpose of this requirement is to give notice to the defendant concerning the nature of the claim. See Sundstrand Corp. v. Standard Kollsman Indus., Inc., 488 F.2d 807, 811 (7th Cir. 1973). And although factual circumstances must be pleaded, "(u)ndoubtedly great generality in the statement of these circumstances can be permitted so long as defendant is given fair notice of what is claimed." Wright & Miller, Federal Practice and Procedure: Civil § 1202.[15] As the Supreme Court's frequently cited opinion in Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), explains:
 
 
 90
 (T)he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.[16]
 
 
 91
 The particularity required of pleadings in civil rights cases is (and should be) no different from that generally required in civil cases. The Second Circuit stated:
 
 
 92
 The mere fact that some of the allegations in the complaint are lacking in detail is not a proper ground for dismissal of the action. Harman v. Valley National Bank of Arizona, 339 F.2d 564, 567 (9th Cir. 1964); 2A Moore's Federal Practice P 12.08, at 2245-2246 (2d ed. 1968). A case brought under the Civil Rights Act should not be dismissed at the pleadings stage unless it appears "to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Barnes v. Merritt, 376 F.2d 8, 11 (5 Cir. 1967). This strict standard is consistent with the general rule. See 2A Moore's, Supra at 2245.
 
 
 93
 Holmes v. New York City Hous. Auth., 398 F.2d 262, 265 (2d Cir. 1968). See also Weise v. Syracuse University, 522 F.2d 397, 408 (2d Cir. 1975). Similarly, Wright & Miller have observed:
 
 
 94
 In all respects the normal federal rule pleading standards apply to civil rights actions . . . (T)he court should remember that fundamental rights and important questions of public policy are involved in actions under the various civil rights statutes and should not dismiss the complaint unless it clearly is frivolous or fails to state a claim for relief.
 
 
 95
 Wright & Miller, Supra at § 1231. And in a recent decision involving a complaint with factual allegations strikingly similar to those in this case (a conspiracy actionable under 42 U.S.C. § 1983 between police officials and private citizens), the Tenth Circuit, citing Conley v. Gibson, supra, and Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), stated:
 
 
 96
 All that is alleged against the defendants other than White and Reynolds (two police officials) is that they conspired together and caused the arrest and detention. No specific facts are set out connecting them to the arrest. Even so we think there is sufficient here to pass the applicable liberal construction test.
 
 
 97
 In many cases of conspiracy essential information can only be produced through discovery, and the parties should not be thrown out of court before being given an opportunity through that process to ascertain whether the linkage they think may exist actually does.
 
 
 98
 Lessman v. McCormick, 591 F.2d 605, 611 (10th Cir. 1979).
 
 
 99
 Even more importantly, this nondiscriminating approach has been adopted by the Supreme Court in its analysis of civil rights complaints. Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), involved a suit challenging the constitutionality of a Louisiana labor statute and of certain actions taken by state officials administering the statute. While discussing an important standing allegation, Mr. Justice Marshall wrote:
 
 
 100
 For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. See, e. g., Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174-75, 86 S.Ct. 347, 348-349, 15 L.Ed.2d 247 (1965). And, the complaint is to be liberally construed in favor of plaintiff. See Fed.Rules Civ.Proc. 8(f); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, supra, at 45-46, 78 S.Ct. at 102.
 
 
 101
 Id. at 421-22, 89 S.Ct. at 1849. Accord Scheuer v. Rhodes, supra; Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (Per curiam ) (allegations of Pro se civil rights complaint tested by pleading standard articulated in Conley ). Thus, in civil rights cases as in other civil matters, all that is required of a complainant's pleadings under Rule 8(a)(2) is sufficient specificity to give notice of the claim to the opposing party.
 
 
 102
 It hardly can be disputed that the allegations of the complaint in this case provided defendants with the requisite notice of "what the plaintiff(s)' claim is and the grounds upon which it rests." Conley, supra, 355 U.S. at 47, 78 S.Ct. at 103. Defendants could not help but learn from the complaint that because of Linda Kay Sparkman's involuntary sterilization she and her husband sought damages under various, specified amendments to the Constitution and under 42 U.S.C. §§ 1983 and 1985(3). Further, defendants were fully apprised of the factual grounds implicating each of them in the alleged wrong. Plaintiffs alleged that defendant Ora E. McFarlin, the natural mother of Linda Kay Sparkman, on July 9, 1971, "executed a 'Petition to Have Tubal Ligation Performed on Minor and Indemnity Agreement' requesting that a tubal ligation be performed upon her daughter." Complaint at P 4. The complaint also alleged that defendant McFarlin entered Linda Kay Sparkman into the hospital for the ostensible purpose of having her appendix removed and later, after the tubal ligation had been performed, told her daughter that "she could not have children then because her Fallopian tubes had been tied, but that her tubes would come untied on their own accord." Id. at PP 14, 18.
 
 
 103
 Plaintiffs also alleged the specific grounds upon which their claims rest against each of the other defendants. Defendant Warren G. Sunday "drafted the Petition signed by Ora E. McFarlin" and "witnessed, as a Notary Public, the execution of the petition . . . ." Id. at PP 5, 12. And "(o)n July 16, 1971, Defendant, John H. Hines, M.D., with the knowledge, approval, acquiescence, aid, and assistance of Defendants, John C. Harvey, M.D., Harry M. Covell, M.D, and DeKalb Memorial Hospital, Inc., without first informing her, performed an operation of sterilization upon Plaintiff, Linda Kay Sparkman." Id. at P 15. It is difficult to imagine "short and plain" pleadings which could satisfy the requirements of Rule 8(a)(2) and Conley more completely.
 
 
 104
 The plurality opinion seems, at least tacitly, to acknowledge this. The plurality focuses only on the sufficiency of the allegation of a conspiracy between the defendants remaining in this case after the Supreme Court's decision in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and the absolutely immune judge.[17] Referring to Paragraphs 24, 27, and 30 of plaintiffs' complaint, the plurality concludes:
 
 
 105
 It is not sufficient to allege that the defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting such a "meeting of the minds." The complaint here obviously does not meet these requirements.
 
 
 106
 Supra, p. 268.
 
 
 107
 It is unclear what the plurality's pleading requirement of "some factual allegations suggesting such a 'meeting of the minds' " means.[18] It should be remembered that under the substantive law of civil conspiracy, "circumstantial evidence may provide adequate proof of conspiracy"; a plaintiff need not present direct evidence of an explicit agreement between the conspirators to prove his case.[19] Hoffman La-Roche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1977). See also United States v. Varelli, 407 F.2d 735, 741-42 (7th Cir. 1969). If the plurality's conception of "some factual allegations suggesting such a 'meeting of the minds' " is simply the allegation of circumstantial evidence from which, if taken as true, a conspiracy could be inferred, the plurality's pleading requirement, although requiring a high degree of factual particularity, comports with substantive conspiracy law. And it would be incongruous, of course, to require evidence in the pleadings that is unnecessary for success on the merits. But if this is the plurality's standard, it has been met by plaintiffs' complaint in this case.
 
 
 108
 The plurality opinion notes the conclusory language of Paragraphs 24, 27, and 30 of plaintiffs' complaint, but ignores the more specific factual allegations (incorporated by reference into the claims described in Paragraphs 24, 27, and 30) of Paragraphs 1-20. Paragraph 13 is the most relevant to the question of the conspiracy between the remaining defendants and the immune judge. It reads:
 
 
 109
 On July 9, 1971, Defendant, Harold D. Stump, Judge of the Circuit Court of DeKalb County, Indiana, apparently without a hearing without Plaintiff, Linda Kay Sparkman, present, and without representation on her behalf, signed the Petition authorizing, under color of state law, the sterilization of Plaintiff, Linda Kay Sparkman, by Defendant, John H. Hines, M.D., at Defendant, DeKalb Memorial Hospital, Inc.
 
 
 110
 This factual allegation, combined with the conspiracy allegations of Paragraphs 24, 27, and 30, clearly provided "fair notice" of what plaintiffs' conspiracy claims are and the grounds upon which they rest. Conley, supra, 355 U.S. at 47, 78 S.Ct. 99.[20] Further, this factual allegation describes a radical departure from normal judicial procedure, a departure which, if proven, could provide the factual basis for a reasonable inference that the immune judge agreed (either explicitly or implicitly) with another defendant to violate Linda Kay Sparkman's constitutional rights.[21]
 
 
 111
 Judge Tone, in his concurring opinion, argues that because plaintiffs' counsel stated at oral argument that they could not show that the immune judge acted corruptly, but only that he acted in reckless disregard of Linda Kay Sparkman's rights, the liberal rules of federal pleading are "beside the point." Supra, p. 269. The question of the judge's motivation vis-a-vis Linda Kay Sparkman, however, is, at this point in the litigation, irrelevant. All plaintiffs need allege is an agreement, either express or implied, between the immune judge and the remaining defendants resulting in the deprivation of plaintiffs' rights. Such an agreement could exist whether or not the immune judge acted corruptly. For example, within the context of the facts as alleged in plaintiffs' complaint and without an additional allegation that the immune judge acted corruptly, the facts adduced at trial could show that the immune judge met with defendant Warren G. Sunday and agreed to enter an ex parte sterilization order without a hearing. The judge hypothetically could have said to Sunday, "I don't know whether this is in violation of Linda Kay Sparkman's rights, but I agree with you and her mother that we should just do it and get her sterilized as quickly as possible." The judge's act might not be wilfully corrupt, but a "meeting of the minds" would have occurred (in this scenario, an express one) between the immune judge and the private defendants which would make the private defendants' activities actionable under 42 U.S.C. § 1983.
 
 
 112
 The plaintiffs' pleadings are sufficient, at the least, to raise an inference that an agreement existed between the immune judge and a remaining defendant which violated Linda Kay Sparkman's constitutional rights. The holding of the five concurring judges that these pleadings are insufficient under Rule 8(a)(2) not only violates the meaning of the rule as explicated by the Supreme Court, but also transforms Sub silentio the proof standards of the substantive law of civil conspiracy.
 
 
 113
 This conclusion is corroborated by the Supreme Court's holding in Adickes v. S. H. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the very case from which the plurality derives its "meeting of the minds" pleading standard for conspiracies. In Adickes there was no direct evidence of an agreement, either implicit or explicit, between the policeman (the uncharged but essential state actor) and the defendants from the restaurant. The plaintiff merely made allegations of fact from which a conspiracy could be inferred. The Supreme Court's synopsis (in its entirety) of the factual allegations of Adickes' complaint stated:
 
 
 114
 While serving as a volunteer teacher at a "Freedom School" for Negro children in Hattiesburg, Mississippi, petitioner went with six of her students to the Hattiesburg Public Library at about noon on August 14, 1964. The librarian refused to allow the Negro students to use the library, and asked them to leave. Because they did not leave, the librarian called the Hattiesburg chief of police who told petitioner and her students that the library was closed, and ordered them to leave. From the library, petitioner and the students proceeded to respondent's store where they wished to eat lunch. According to the complaint, after the group sat down to eat, a policeman came into the store "and observed (Miss Adickes) in the company of the Negro students." A waitress then came to the booth where petitioner was sitting, took the orders of the Negro students, but refused to serve petitioner because she was a white person "in the company of Negroes." The complaint goes on to allege that after this refusal of service, petitioner and her students left the Kress store. When the group reached the sidewalk outside the store, "the Officer of the Law who had previously entered (the) store" arrested petitioner on a groundless charge of vagrancy and took her into custody.
 
 
 115
 Id. at 149, 90 S.Ct. at 1604. See also id. at 175, 90 S.Ct. 1598, (Black, J., concurring). The Supreme Court expressly noted that Adickes' conspiracy claim was based, not on allegations of facts directly demonstrating a "meeting of the minds," but rather on the argument that
 
 
 116
 although she had no knowledge of an agreement between Kress and the police, the sequence of events created a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses.
 
 
 117
 Id. at 157, 90 S.Ct. at 1608. On the basis of this conspiracy allegation and a sparse preliminary record, the Supreme Court reversed the Fifth Circuit's affirmance of the district court's summary judgment in favor of the defendants in Adickes. Yet this court today has affirmed the dismissal of pleadings which are indistinguishable from the claims in Adickes with respect to the sufficiency of the conspiracy allegations.[22]
 
 
 118
 The five concurring judges have disregarded the Supreme Court's directive that
 
 
 119
 a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
 
 
 120
 Conley, supra, 355 U.S. at 45-46, 78 S.Ct. at 102. They have done so because they have determined that policy objectives, which they believe to be important, would be served by restricting access to the courts for those seeking redress for wrongs allegedly perpetrated by private individuals in concert with immune judges. See supra, pp. 267-268 (plurality opinion). See also supra, p. 262 (Fairchild, C. J., concurring). By a procedural ruling in contravention of the Federal Rules of Civil Procedure and Supreme Court decisions interpreting those rules, this court effectively has engrafted a substantive limitation on section 1983 liability. The court's ruling makes it more difficult to plead and prove a claim against a distinct class of section 1983 defendants. This decision, like all decisions about imposing or not imposing federal statutory liability for types of wrongdoing, should be based on an evaluation of the competing policy interests; the decisionmaker must determine whether it is better or not to offer the federal judicial system as a forum for redress for such alleged wrongs. But this decision is one reserved for Congress, and Congress promulgated section 1983 and approved the Federal Rules of Civil Procedure without the restriction erected by the five concurring judges in this case.[23] Judicial incantation of hypothetical policy "horribles" cannot justify imposition of this restriction on the scope of the statute's protection.
 
 
 121
 Finally, even if the five concurring judges were correct that plaintiffs' complaint as it stands fails to state a claim upon which relief can be granted, the appropriate action for this court is not to affirm the district court's dismissal of plaintiffs' claim. Under Fed.R.Civ.P. 15(a), a party, after receiving service of a responsive pleading (an answer has been filed in this case), can amend his complaint "by leave of court."[24] And such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). As we said recently,
 
 
 122
 Rule 15(a) provides that "leave shall be freely given when justice so requires," and this circuit has adopted a liberal policy respecting amendments to pleadings so that cases may be decided on the merits and not on the basis of technicalities. Fuhrer v. Fuhrer, 202 F.2d 140, 143 (7th Cir. 1961); Asher v. Harrington, 461 F.2d 890, 895 (7th Cir. 1972). As was stated in Fuhrer v. Fuhrer, Supra, at 143, "(l)eave to amend should be freely given unless it appears to a certainty that plaintiff would not be entitled to any relief under any state of facts which could be proved in support of his claim."
 
 
 123
 Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1334 (7th Cir.), Cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Accord Staren v. American Nat'l Bank & Trust Co., 529 F.2d 1257, 1263 (7th Cir. 1976); Austin v. House of Vision, Inc., 385 F.2d 171, 172-73 (7th Cir. 1967). Today's decision affirming the district court's dismissal of plaintiffs' complaint without granting leave to amend has seriously impaired, if not overruled Sub silentio, our previous holdings.
 
 
 124
 The sufficiency of plaintiffs' pleadings was never ruled on by the district court. No motion pursuant to Rule 12(e) for a more definite statement of plaintiffs' claim was made by defendants. And the complaint has been struck down by a new pleading standard significantly more stringent than the standard embodied in the Federal Rules.[25] Under these circumstances, plaintiffs should have been permitted to amend their complaint.
 
 
 125
 For all the foregoing reasons, I believe that the district court's decision should be reversed. At the very least, this case should be remanded and plaintiffs given the opportunity to amend their complaint pursuant to Fed.R.Civ.P. 15(a).
 
 
 
 [1]
 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [2]
 398 U.S. at 152, 90 S.Ct. at 1605. Although the Price case, relied on in Adickes, was a criminal proceeding under 18 U.S.C. § 242 the Court in Price determined that
 "Under color" of law means the same thing in § 242 that it does in the civil counterpart of § 242, 42 U.S.C. § 1983 . . .. In cases under § 1983, "under color" of law has been consistently treated as the same thing as the "state action" required under the Fourteenth Amendment.
 United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).
 
 
 [3]
 The complaint alleged that "a tubal ligation had been performed on Linda Kay Sparkman which would permanently prevent her from becoming pregnant and permanently deprive her of the natural rights of motherhood." (par. 20). In Cox v. Stanton, 529 F.2d 47, 49 (4th Cir. 1975), the alleged deprivation of rights rested on the allegation that the plaintiff was permanently sterilized and that the state welfare agency had petitioned the Eugenics Board to authorize a doctor to perform a tubal ligation, "which is usually reversible," but instead he performed "an irreversible bilateral salpingectomy sterilization." See also, Briley v. State of California, 564 F.2d 849 (9th Cir. 1977) (castration); Downs v. Sawtelle, 574 F.2d 1 (1st Cir. 1978) (sterilization)
 
 
 [4]
 Third Circuit: Waits v. McGowan, 516 F.2d 203, 205 (1975); Fifth Circuit: Guedry v. Ford, 431 F.2d 660, 664 (1970) (adopting district court opinion); Hill v. McClellan, 490 F.2d 859, 860 (1974); Humble v. Foreman, 563 F.2d 780, 781 (1977); Perez v. Borchers, 567 F.2d 285, 287 (1978); Sixth Circuit: Kurz v. Michigan, 548 F.2d 172, 175 (1977), Cert. denied, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462 (1977); Ninth Circuit: Haldane v. Chagnon, 345 F.2d 601, 604-05 (1965); Briley v. California, 564 F.2d 849, 858 (1977); Tenth Circuit: Bottone v. Lindsley, 170 F.2d 705, 707 (1948), Cert. denied, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949)
 
 
 [5]
 First Circuit: Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1976); Slotnick v. Staviskey, 560 F.2d 31, 33 and n. 1 (1977), Cert. denied, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978) (Coffin, C. J., separate opn.); Second Circuit: Fine v. City of New York, 529 F.2d 70, 75 (1975); Third Circuit: Jennings v. Shuman, 567 F.2d 1213, 1220 (1977). Cf. United States v. Lester, 363 F.2d 68, 74 (6th Cir. 1966); Downs v. Sawtelle, 574 F.2d 1, 15-16 (1st Cir. 1978)
 
 
 [6]
 French v. Corrigan, 432 F.2d at 1214; Hansen v. Ahlgrimm, 520 F.2d at 770
 
 
 [7]
 Inasmuch as most civil rights conspiracies can be likened to a conspiracy to defraud a person of his constitutional rights, some courts have applied the language of Fed.R.Civ.P. 9(b) that "(i)n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Lee v. Alabama, 364 F.2d 945 (5th Cir. 1966); MacKenna v. Ellis, 263 F.2d 35, 38 (5th Cir. 1959)
 
 
 [8]
 Paragraph 30 provided:
 The actions of Defendants, Ora E. McFarlin, Warren G. Sunday, Harold D. Stump, John H. Hines, M.D., John C. Harvey, M.D., Harry M. Covell, M.D. and DeKalb Memorial Hospital, Inc., in concert and with the common goal and result of sterilizing Linda Kay Sparkman, deprived said Linda Kay Sparkman of her constitutional and statutory rights to privacy, to the equal protection of the laws and to not be deprived of life or property without the due process of law. The concerted action was taken against Linda Kay Sparkman because of her sex, her marital status and of her allegedly low mental ability, all in violation of 42 U.S.C. § 1985(3).
 
 
 [9]
 Paragraphs 24 and 27
 
 
 *
 In response to questions from the court, counsel stated that they could not show Judge Stump acted corruptly but could show that his action was so inconsistent with generally recognized principles that it was in reckless disregard of Linda Sparkman's rights
 
 
 [1]
 I have designated the portion of Judge Sprecher's opinion affirming the district court because of lack of particularity in plaintiffs' allegations of conspiracy as the plurality opinion. Judges Pell and Bauer (through Judge Pell) have agreed with Judge Sprecher's conclusion and apparently have concurred in his analysis on this issue. It is less than clear whether Judges Fairchild and Tone, who both agree that the district court should be affirmed because of a lack of sufficient factual allegations in plaintiffs' conspiracy counts, also agree with Judge Sprecher's reasoning in support of this conclusion. Thus, I have refrained from characterizing Judge Sprecher's opinion as a majority opinion and instead will refer to it as the plurality
 
 
 [2]
 Plaintiff's claim that she was deprived of her constitutional rights is buttressed by the allegation that the sterilization order was entered without even the minimal procedural safeguards maintained by the Due Process Clause of the Fourteenth Amendment
 
 
 [3]
 The "under color" of law requirement of section 1983 is interpreted as being the same as the "state action" requirement of the Fourteenth Amendment. Robinson v. Bergstrom, 579 F.2d 401, 404 n. 3 (7th Cir. 1978) (Per curiam ). See also United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)
 
 
 [4]
 See, e. g., Perez v. Borchers, 567 F.2d 285, 287 (5th Cir. 1978) (Per curiam ); Kurz v. State of Michigan, 548 F.2d 172, 175 (6th Cir.), Cert. denied, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462 (1977); Hazo v. Geltz, 537 F.2d 747, 749 (3d Cir. 1976); Sykes v. State of California, 497 F.2d 197, 202 (9th Cir. 1974); Guedry v. Ford, 431 F.2d 660, 664 (5th Cir. 1970) (Per curiam ); Haldane v. Chagnon, 345 F.2d 601 (9th Cir. 1965); Russell v. Town of Mamaroneck, 440 F.Supp. 607, 611-12 (S.D.N.Y.1977); Jemzura v. Belden, 281 F.Supp. 200, 206 (N.D.N.Y.1968)
 
 
 [5]
 See Grow v. Fisher, 523 F.2d 875, 878 (7th Cir. 1975) (criticizing the lack of any rationale for the proposition)
 This circuit has touched upon this issue in three recent opinions. Most recently, in Hansen v. Ahlgrimm, 520 F.2d 768 (7th Cir. 1975), this court said: "Moreover, even assuming plaintiff's allegations to be sufficiently specific to overcome this defect, it has been frequently stated that allegations of conspiracy between private persons and public officials who are themselves immune from liability under the facts alleged are insufficient to establish liability of the private persons under color of state law for purposes of the Civil Rights Act." Id. at 770. This conclusory language, however, comprised, at best, an alternative basis for the court's result. Further, the Hansen court offered no rationale for its interpretation of the law. Similarly, in Brown v. Dunne, 409 F.2d 341 (7th Cir. 1969), the court ruled that private attorneys could not be joined as "wilful participants" in a conspiracy to deprive constitutional rights with public officials acting within "the ambit of their official function." Id. at 344. Again, the court failed to provide any analysis supporting its decision. Finally, in French v. Corrigan, 432 F.2d 1211 (7th Cir. 1970), Cert. denied, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971), this court, although presented with facts similar to those in the instant case, never addressed the question of whether a claim can be stated against private persons for conspiracies with immune officials, merely stating that the acts of the private defendants were not done under color of law. Id. at 1214.
 A reading of all the cases from other circuits cited in note 4, Supra, reveals that no reasons are given for their holdings. Instead, citation is given to Haldane v. Chagnon, 345 F.2d 601, 604 (9th Cir. 1965), which itself gave the question only perfunctory consideration. The continued validity of Haldane, if not already undercut by Price And Adickes, is questionable even in the Ninth Circuit. See Briley v. State of California, 564 F.2d 849, 858 n. 10 (9th Cir. 1977).
 
 
 [6]
 Whenever a judge acts in his official capacity, it is an action of the state. This does not mean, as defendants suggest, that all litigants who use state courts to enforce private claims and obtain judgments are subject to possible civil rights liability based solely on that use. Section 1983 does not create a remedy for every wrong committed under color of state law; only deprivation of rights secured by the Constitution is actionable. "Even if there is 'state action,' the ultimate inquiry in a Fourteenth Amendment case is, of course, whether that action constitutes a denial or deprivation by the State of rights that the Amendment protects." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 n. 4, 98 S.Ct. 1729, 1733 n. 4, 56 L.Ed.2d 185 (1978) (Rehnquist, J.)
 Many courts, including this court, have held that there is no cause of action under the Civil Rights Act if the claim arises from private litigation in which the state does no more than furnish the forum and has no interest in the outcome. See, e. g., Hill v. McClellan, 490 F.2d 859, 860 (5th Cir. 1974) (Per curiam ); Skolnick v. Martin, 317 F.2d 855, 857 (7th Cir. 1963). The reason for this holding is not the absence of state action. Any time a court acts or enforces a private right there is state action. See Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The question in these cases is not whether a state has "acted," but whether its role in the circumstances was indispensable to a denial of a right secured by the Fourteenth Amendment. See Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harv.L.Rev. 1, 29-30 (1959); Henkin, Shelley v. Kraemer: Notes for a Revised Opinion, 110 U.Pa.L.Rev. 473 (1962); Horowitz, The Misleading Search for "State Action" under the Fourteenth Amendment, 30 So.Calif.L.Rev. 208 (1957). In any event, plaintiffs in this case do not allege merely that the state provided a disinterested forum. Rather, they allege that the state court judge was an active participant in a conspiracy.
 
 
 [7]
 The Supreme Court stated the policy underpinnings of the immunity doctrine in Scheuer v. Rhodes, 416 U.S. 232, 242, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974):
 Implicit in the idea that officials have some immunity absolute or qualified for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all.
 
 
 [8]
 Fairness would dictate that private persons be afforded some form of immunity when they act in obedience to a judicial order or under the court's direction. The reason that this "derivative immunity" is appropriate is that, since judges are immune from suit for their decisions, it would be unfair to hold liable the people who merely carry out that judicial will. In this case, however, none of the private coconspirators was ordered to perform the sterilization
 
 
 [9]
 Some slight inconvenience and embarrassment might be placed on a judge if suits were to be allowed against his alleged coconspirators; however, these burdens are minimal and surely "less important than . . . bringing conspirators to book." Slotnick, supra, 560 F.2d at 33 n. 1
 
 
 [10]
 The rationale underlying the holdings of these cases is that immunity is not a declaration of one's guilt or innocence. See W. LaFave, Criminal Law § 62 at 488-89 (1972)
 
 
 [11]
 See United States v. Fox, 130 F.2d 56 (3d Cir. 1942), Cert. denied, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535 (1943); United States v. Crum, 404 F.Supp. 1161 (W.D.Pa.1975); Cline v. State, 204 Tenn. 251, 319 S.W.2d 227 (1958); Rex v. Duquid, 75 L.J.K.B. 470 (1906). See generally, Annot., 91 A.L.R.2d 700, 722-23 (1963)
 
 
 [12]
 See Rice v. Gray, 225 Mo.App. 890, 34 S.W.2d 567 (1930) (husband's action for conspiracy and false incarceration: evidence of wife's acts held admissible against her coconspirators even though the wife was dismissed as a party defendant because of interspousal immunity)
 
 
 [13]
 The motion to dismiss of defendants Harvey and DeKalb Memorial Hospital, filed before the district court on February 17, 1976, argued, inter alia, that plaintiffs' conspiracy allegations were insufficient. The district judge dismissed plaintiffs' complaint solely on the ground that Judge Stump possessed absolute judicial immunity, thereby precluding any action against him or his alleged coconspirators under sections 1983, 1985(3) or the Fourteenth Amendment. Sparkman v. McFarlin, Civil No. 75-129 (N.D.Ind.1976)
 
 
 [14]
 The plurality opinion contends that the pleading standard applied in this case can be distilled from prior Seventh Circuit cases. To the extent that this argument is correct, it proves only that those cases reflect an implicit decision to ignore the Federal Rules of Civil Procedure and Supreme Court decisions interpreting the rules when assessing the adequacy of pleadings in civil rights cases. In applying its interpretation of the standards of Federal Rules 8 and 12 to the complaint in this case, however, the plurality has imposed a stricter pleading test than that required to dispose of the complaints in the cases it cites as precedent
 In Davis v. Foreman, 251 F.2d 421 (7th Cir.), Cert. denied, 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1148 (1958), this court concluded that None of the actions complained of were committed by a state official in his official capacity; therefore, the complaint "totally" failed to allege sufficient facts for federal jurisdiction. (emphasis added.) The court in Duzynski v. Nosal, 324 F.2d 924 (7th Cir. 1963), noted that the plaintiff's allegations suggested that the defendants had acted independently rather than in concert. Further, there were no procedural irregularities from which a conspiracy could be inferred. Id. at 931. Similarly, in Kamsler v. Zaslawsky, 355 F.2d 526 (7th Cir. 1966), and Dieu v. Norton, 411 F.2d 761 (7th Cir. 1969), the court said that there were No facts to support the conclusory allegations of conspiracy; the complaints described apparently normal judicial proceedings. In Hansen v. Ahlgrimm, 520 F.2d 768 (7th Cir. 1975), the conspiracy allegations were made "without showing Any 'overt acts which defendants engaged which were reasonably related to the promotion of the claimed conspiracy.' " Id. at 770. (emphasis added) And in Grow v. Fisher, 523 F.2d 875 (7th Cir. 1975), the court noted that the plaintiff, in support of his conspiracy allegations, failed to "allege specifically" why the judicial action in question was in any way unreasonable. None of the complaints described in these cases contained specific allegations of procedural irregularity like those present in the Sparkman complaint. See infra, 278-279.
 Finally, the court in French v. Corrigan, 432 F.2d 1211 (7th Cir. 1970), Cert. denied, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971), did not dismiss the plaintiff's complaint for lack of particularity; in fact, the plaintiff did offer specific "allegations as to the acts committed by defendants in pursuance of the alleged conspiracy." Id. at 1213. The court concluded, however, that these factual allegations were "so bizarre as to require a summary rejection." Id. The appropriateness of a dismissal under Rule 12(b) (6) on these grounds is questionable, but, in any event, French is not a case in which the court dismissed a cause of action for lack of pleading particularity.
 
 
 [15]
 A proposal to amend Rule 8(a)(2) to require "fact pleading" (as opposed to the "notice pleading" required under the rule as it stands) was proposed by the Judicial Conference of the Ninth Circuit in 1952. The amendment would have appended the phrase "which statement shall contain the facts constituting a cause of action" to the existing language of the rule. The proposal was rejected by the Supreme Court's Advisory Committee in 1955
 
 
 [16]
 The limitation of Rule 8(a)(2)'s function to "notice" is made possible by other rules within the structure of the Federal Rules of Civil Procedure designed to elicit the particular facts underlying a claim or to narrow the issues for trial. These rules include: Rule 12(e) (motion for a more definite statement); Rule 12(f) (motion to strike portions of the pleadings); Rule 12(c) (motion for judgment on the pleadings); Rule 16 (pre-trial procedure and formulation of issues); Rules 26-37 (depositions and discovery); Rule 56 (motion for summary judgment); and Rule 15 (right to amend). See Conley, supra, 355 U.S. at 48 n. 9, 78 S.Ct. 99. See also Wright & Miller, Federal Practice and Procedure: Civil § 1202; United States v. Employing Plasterers Assoc. of Chicago, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954) (summary dismissal of a civil case for failure to set out evidential facts seldom justified: if more facts required, invoke Rule 12(e); if claim frivolous, avoid trial by invoking Rule 56)
 
 
 [17]
 As the plurality correctly indicates, this allegation is essential to plaintiffs' case since the remaining defendants can be liable under section 1983 only if they engaged in a conspiracy with the judge
 
 
 [18]
 I assume that the flaw the plurality finds with plaintiffs' complaint is not its failure to use the phrase "meeting of the minds" to plead its allegation that the immune judge conspired with one or more of the remaining defendants. As Judge Wisdom observed:
 The time when the slip of a sergeant's quill pen could spell death for a plaintiff's cause of action is past. Under Federal Rules of Civil Procedure, a complaint is not an anagrammatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases.
 Thompson v. Allstate Ins. Co., 476 F.2d 746, 749 (5th Cir. 1973) (Wisdom, J.).
 
 
 [19]
 Conspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed
 
 
 [20]
 There is no record of any of the defendants moving under Fed.R.Civ.P. 12(e) for "a more definite statement" of plaintiffs' conspiracy allegations
 
 
 [21]
 These gross procedural irregularities of the immune judge distinguish the judicial proceedings in this case from the judicial proceedings which formed the basis of the complaints in the cases cited in Part II of the plurality opinion. See supra, p. 275 n. 14. The Sparkmans' allegations describe much more than private persons merely "invoking an exercise of the judge's judicial authority or merely . . . taking action which a judge exercising such authority has purported to 'approve.' " Supra, p. 269 (Tone, J., concurring). Further, the fact that the Supreme Court in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), said that the immune judge acted within his "judicial authority" does not preclude the possibility that the immune judge conspired with defendants to violate Linda Kay Sparkman's rights
 
 
 [22]
 While Adickes' complaint apparently contained more factual details than the Sparkman complaint, the difference is immaterial and could not constitute a supportable distinction between the two cases
 
 
 [23]
 The doctrine of official immunity, of course, is effectively a limitation on the scope of section 1983. This doctrine, however, is ostensibly rooted in the official immunity available at common law prior to the passage of section 1983; the Supreme Court has concluded that Congress did not intend to abrogate the common law doctrine when it passed section 1, of the Civil Rights Acts. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). See also supra, Part I, B., pp. 273-274
 
 
 [24]
 Under Fed.R.Civ.P. 15(c), an amendment by the Sparkmans to plead their conspiracy allegation with greater specificity would relate back to the time their original complaint was filed. Rule 15(c) states:
 Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
 
 
 [25]
 Even though the plurality opinion contends that this more stringent standard can be found in prior Seventh Circuit decisions, Compare supra, pp. 264-267 With p. 275 n. 14, it nowhere asserts that this standard was sufficiently explicit in those cases to give potential section 1983 plaintiffs notice of the strict pleading requirement