THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MIKE KAPRELIAN *et al.*, Defendants-Appellants.

(Nos. 55970, 55971, cons.;

First District—July 14, 1972.

*Rehearing denied August 8, 1972.*

Samuel Papenek, Julius Lucius Echeles, and Frederick F. Cohn, all of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen J. Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendants appeal from a conviction for the crime of theft of property having a value of less than $150. (Ill. Rev. Stat. 1969, ch. 38, par. 16—1.) After a consolidation of separate complaints against each of the defendants, they were both found guilty by the court in a bench trial and sentenced to terms of six months.

At the trial, Ruth Berbes, a security investigator for Allied Radio Corporation, testified that she was on assignment for her employer at the Park Forest Shopping Center on March 21, 1970. While walking to her car in the parking lot, Mrs. Berbes observed the defendant Baker get out of a parked convertible car. Defendant Kaprelian emerged from the same car a few minutes later. The witness stated that she became suspicious of defendants because of their actions. This prompted her to follow Baker into the Jewel-Osco store in the shopping center. At the time Mrs. Berbes entered the Jewel-Osco, Kaprelian was walking behind her in the general direction toward the store.

Mrs. Berbes testified that Baker, upon entering the store, went directly to the liquor department. She took up a position approximately fifteen feet away to observe his actions. As Mrs. Berbes viewed Baker from the side, she saw him take a bottle of liquor off a display shelf and turn quickly so that his back was facing her. When Baker turned back to his initial position, Mrs. Berbes stated that the bottle of liquor was no longer in his hand. He did not return the bottle to the display. Mrs. Berbes saw Baker repeat this procedure before he left the store; he did not stop at any checkout counter on the way out. Mrs. Berbes followed Baker to his car, saw him enter the car and remove some liquor bottles from under his coat. From an observation point at the rear of the car, she saw Baker place the bottles under the car's front seat.

Baker then left the car and began to walk back in the direction of the Jewel-Osco. While walking across the parking lot, Kaprelian and Baker met and talked. Baker then went back into the store, and Kaprelian proceeded to the convertible car. He removed a liquor bottle from under his coat and placed it in the car. Kaprelian then got out of the car and returned to the store. Mrs. Berbes testified that at this point in time she went to the Allied Radio Store and asked the manager to call the police. Before the police arrived, the witness saw both defendants return from the store, place liquor in the car and then return to the store again.

Sergeant Donald Rekau of the Park Forest Police Department responded to the call, and Mrs. Berbes informed him of what she had observed. She pointed out Baker who was returning to his car from the Jewel-Osco for the third time. Sergeant Rekau testified that he approached Baker in the car and asked him what he had under his coat. As Baker leaned over and began to take something from under his coat, the officer grabbed him by the arm and demanded to see what was under the coat. The officer stated that he observed three bottles of liquor stuck in Baker's pants belt. When Baker could not produce a sales receipt, Sergeant Rekau placed him under arrest and advised him of his rights.

When Kaprelian returned to the car, Sergeant Rekau asked him for identification. When Kaprelian opened his coat to reach for his identification, the officer observed a large bulge around the defendant's midsection. The officer found three liquor bottles stuck in Kaprelian's belt. When Kaprelian could not produce a receipt, he was also placed under arrest. Sergeant Rekau stated that he advised Kaprelian of his rights at this time. All six liquor bottles taken from the persons of Baker and Kaprelian had price tags affixed that carried the "Osco" name.

Defendants Baker and Kaprelian both testified in their own behalf. The accounts they gave of their activity at the Park Forest Shopping Center on the date in question were substantially similar. Kaprelian

testified that he had gone to the Park Forest area with his wife and children to purchase a dog. Kaprelian, who was employed as a printer, occasionally assisted Baker with his job as a route man for a vending machine company. Baker's employer testified that his company did not have any machines in Park Forest. However, Baker stated that he was interested in attempting to install some of his machines in the area. Accordingly, he had arranged to meet Kaprelian at the shopping center on the afternoon of March 21, 1970. After their meeting, Baker told Kaprelian that he was interested in making some liquor purchases from the Jewel-Osco store in the Center because there was a sale in progress at the store. Baker noted that there was a three-to-a-customer limit on the sale items.* Therefore, he asked both Mr. and Mrs. Kaprelian to make purchases for him. Baker stated that he had paid for the liquor that he was found with but that he had thrown away the sales slip. He stated he had purchased nine bottles on three separate trips into the store. Kaprelian testified that he was carrying liquor bottles under his clothing when arrested because he had taken it from his wife's shopping bag and "felt kind of foolish" carrying the bottles.

## Opinion

Defendants' first argument rests on their contention that the complaints charging them with the crime of theft were defective because they failed to properly allege the identity of the person injured. The complaints charge that Baker and Kaprelian "knowingly obtained unauthorized control over * * * the property of Jewel-Osco, with the intent to deprive said Jewel-Osco" permanently of the use and benefit of certain property. The complaints failed to indicate that ownership was in a corporation or other business entity or in a person. Defendants urge that this failure to precisely describe the ownership of the property allegedly stolen is a fatal variance, renders the charge void and calls for a reversal.

■■ In assessing the merit of this contention, we are guided by the established principle that: "[a] variance as to names alleged in an indictment and proved by the evidence is not regarded as material unless it is made to appear to the court that some substantial injury was done to the accused thereby." (*People v. Nelson* (1959), 17 Ill.2d 509, 512, 162 N.E.2d 390, 392.) The purpose of requiring that an indictment name the injured person with specificity is to (1) inform the accused of the charge against him to enable him to prepare for trial; and (2) to avoid

---

* Ronald Green, Director of Security for Osco Drugs, testified that there were no limitations placed on purchases at the liquor department of the Park Forest Jewel-Osco store.

a second prosecution for the same offense. (*People v. Collins* (1970), 123 Ill.App.2d 138, 142, 260 N.E.2d 30, 32.) The record in this case discloses that the premises of the Jewel-Osco store were adequately identified in the indictment and by the evidence to show that defendants were aware of the exact identity of the premises involved. Protection against double jeopardy is likewise afforded through the testimony at trial. As noted, the record adequately establishes the premises, and defendants have recourse to the record to establish a defense of prior jeopardy in subsequent prosecution for the same offense. (See *People v. Palmer* (1972), 4 Ill.App.3d 309, 311-312, 280 N.E.2d 754, 756-757.) We cannot conclude that any substantial injury was worked upon defendants in this regard.

Defendants also contend that they were not afforded the opportunity to make an intelligent and knowing jury waiver before their case proceeded to trial. The basis of this argument stems from an interchange between the court and the attorney for defendants. Defense counsel informed the court that defendants had signed jury waivers. Then, in response to a question from the court, counsel stated that the jury was being waived by both defendants. It is argued that this interchange is insufficient to demonstrate a knowing jury waiver by defendants.

❸ 4-6 There is no precise standard to determine if a defendant has made an understanding jury waiver. Rather, the facts of a particular case must be examined. Herein, the record shows that counsel for defendants, in their presence and without objection on their part, informed the court that a jury was waived. Our Supreme Court has held that a trial court is entitled to rely on defendant's attorney where he announces a jury waiver in open court and such waiver is not objected to by the defendant. This ruling rests on the theory that an accused, who ordinarily speaks and acts through his attorney, acquiesces in the actions of the attorney and is bound by such actions unless he objects to them. (*People v. Sailor* (1969), 43 Ill.2d 256, 260-261, 253 N.E.2d 397, 399.) Applying this rule to the instant case, it cannot be said that defendants made unknowing jury waivers.

❸ 7, 8 Next defendants maintain that evidence obtained at the time of their arrest was violative of their Fourth Amendment rights and improperly admitted at the trial. The arrests were made by officers who had no personal knowledge that a crime had been committed. The seizure of the liquor bottles was made at the same time. It is argued that this conduct does not satisfy the probable cause requirement of the Fourth Amendment in that the officer acted on information supplied by an informant whose reliability had not been established. The usual re-

quirement of prior reliability which must be met when police act on information from professional informers does not apply to information supplied by private citizens. Reliable information upon which the police may legally act may come from any citizen. (*People v. Hester* (1968), 39 Ill.2d 489, 514, 237 N.E.2d 466, 481.) Under the circumstances of this case, it is untenable to classify Mrs. Berbes as a professional informer. The information she gave the police was sufficient to show that there was probable cause to investigate defendant's activities. Sergeant Rekau had a right to rely on the information and his subsequent conduct was within Fourth Amendment boundaries.

■■ Defendants next question that the evidence was sufficient to convict beyond a reasonable doubt. We are satisfied that the evidence is adequate to prove each defendant guilty of theft beyond a reasonable doubt. The direct evidence set forth by the State shows that both Baker and Kaprelian committed theft. The fully substantiated evidence that both defendants had liquor bottles concealed under their clothing, with markings similar to those in use at the Jewel-Osco store, is a strong circumstance linking them to the alleged theft. When this fact is coupled with Mrs. Berbes' observations of the conduct of both defendants, the link becomes even stronger. It is significant to note that Mrs. Berbes had ample opportunity to observe the activities of both defendants.

■■ Defendants would counter this conclusion with the question of the credibility of the witness. It is a well established rule of law that a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trier of fact who observed the witness and heard the evidence presented. The reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (See *People v. Mills* (1968), 40 Ill.2d 4, 19, 237 N.E.2d 697, 705.) The evidence in this case is not so unsatisfactory as to leave a reasonable doubt as to defendants' guilt.

■■ Defendants elected at trial to justify their alleged purchases of the liquor found on their persons. When a defendant makes such an election, he must tell a plausible story or be judged by its improbability. (See *People v. Bullock* (1970), 123 Ill.App.2d, 30, 34, 259 N.E.2d 641, 643.) The trial judge, as the trier of fact was entitled to disbelieve the explanations made by defendants. The judge heard evidence which, from his vantage point, established guilt beyond a reasonable doubt. In view of the fact that the record does not raise serious doubts of defendant's guilt, we will not substitute our judgment for his.

■■ Finally, defendant Kaprelian argues that a statement he allegedly made to the arresting officer was improperly admitted at the

trial absent a showing that defendant was advised of his constitutional rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436. At the police station, Kaprelian told the arresting officer that he had stolen some alcohol, and the officer related it at the trial. In substance, the record discloses that the arresting officer gave Kaprelian only general advice of his right to counsel. He did not clearly inform defendant of his right to have counsel present at the interrogation stage of his arrest or that a lawyer would be provided for him if he could not afford his own counsel. Such a failure on the part of the police jeopardized Kaprelian's privilege against self-incrimination. Without proof of a knowing waiver, defendant's *Miranda* rights were violated. However, there are circumstances where a failure to comply fully with *Miranda* can be classified as harmless error. If it can be determined beyond a reasonable doubt that the error did not contribute to the conviction, a reversal on the constitutional grounds is not warranted. (*People v. Landgham* (1970), 122 Ill.App.2d 9, 24-25, 257 N.E.2d 484, 491-492.) In this case, the oral statement of defendant Kaprelian did not prove any element of the crime of theft that was not established more convincingly and strongly by other direct and competent evidence. When the evidence of Kaprelian's guilt is compared with the weight of the oral statement which was improperly admitted, we must conclude beyond a reasonable doubt that the admission of the statement into evidence constituted harmless error.

For all of the above reasons, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.