**Albert BRUCAR and Ruth Brucar, Plaintiffs-Appellants,**

**v.**

**Ira RUBIN, Marvin Juron, and Harry Weisberg, Defendants-Appellees.**

**No. 80–1053.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1980.

Decided Dec. 10, 1980.*

Rehearing and Rehearing En Banc Denied Feb. 23, 1981.

---

* This appeal was originally decided by unreported order on December 10, 1980. See Circuit

Rule 35. The Court has subsequently decided to issue the decision as a *per curiam* opinion.

Edward S. Boraz, Philip C. Wherry, Chicago, Ill., for plaintiffs-appellants.

Norman J. Lerum, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.**

PER CURIAM.

Plaintiffs Albert and Ruth Brucar seek damages against defendants Harry Weisberg, Ira Rubin and Marvin Juron under 42 U.S.C. § 1983 for violation of their civil rights.[1] Mr. Weisberg is Mrs. Brucar's brother; Mr. Rubin and Mr. Juron are his attorneys. The district court dismissed the complaint for failure to state a claim for which relief could be granted, holding that the defendants are not state actors and that the complaint failed to allege a conspiracy between the defendants and any state official with sufficient specificity to meet the requirements of *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979). The Brucars then filed an amended complaint, which the district court again dismissed on the same ground. The Brucars appeal from both dismissals.

Counts I and IV of the Brucars' amended complaint, which are based on § 1983, include some 99 numbered paragraphs detailing the alleged conspiracy between the defendants and a state court judge. Because we are asked to rule on the sufficiency of the complaint, we will recap, as briefly as possible, the substance of the Brucars' allegations.

The Brucars allege that sometime in 1976, Mr. Weisberg, through his attorneys, brought a petition in the Illinois probate court seeking to have his mother, Dora Weisberg, declared incompetent and to be appointed conservator of her estate. At

---

** The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. In their original complaint, the Brucars also sought damages under 42 U.S.C. § 1985. The

district court held this claim insufficient in that it failed to allege class-based animus. See *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976). On this appeal the Brucars have not pressed their § 1985 claim, and therefore we do not consider it.

that time Dora Weisberg was living with the Brucars (her daughter and son-in-law). A hearing was scheduled for October 18, 1976, before Judge Kogut of the Cook County Circuit Court Probate Division. Shortly before the hearing, Mrs. Brucar saw Ira Rubin, Mr. Weisberg's attorney, enter the courtroom from Judge Kogut's chambers, followed by Judge Kogut. The Brucars' attorney was not present in the judge's chambers at that time.

At the hearing Judge Kogut summarily declared Dora Weisberg incompetent. He rejected the Brucars' oral request for examination of her by a court-appointed physician,[2] he did not examine Mrs. Weisberg, and he took no evidence regarding her competency. Judge Kogut then appointed Mr. Weisberg conservator of her estate, rejecting the Brucars' objections to Mr. Weisberg's fitness for the job.

As conservator, Mr. Weisberg instituted citation proceedings against the Brucars under the Illinois Probate Act (Ill.Rev.Stat. ch. 3 § 183, now ch. 110½, § 16–1) to recover monies allegedly belonging to Dora Weisberg's estate. The proceedings were initially brought before Judge Kogut. The Brucars moved for change of venue on grounds of the judge's prejudice pursuant to Ill.Rev. Stat. ch. 146 § 1(2). At a hearing on December 21, 1976, Judge Kogut entered an order granting the transfer, but also enjoining the Brucars from transferring any assets in which Dora Weisberg had an interest. According to the amended complaint, the judge then ordered the Brucars out of his courtroom and threatened to jail them if they ever appeared before him again. In addition, he "verbally assaulted" the Brucars' attorney, threatening him with physical violence.

Mr. Weisberg's action against the Brucars was reassigned to Judge Trafelet and a bench trial was held. In an order dated June 30, 1977, Judge Trafelet awarded damages amounting to approximately $44,-000 against the Brucars. On July 15, 1977, Judge Trafelet set an appeal bond at $60,-000, but on July 18, 1977, he lowered the bond to $44,065.35.

On July 27, 1977, the Brucars filed their notice of appeal and on August 3, 1977, they filed, in the Illinois Appellate Court, a motion for stay pending appeal requesting that the $44,065.35 bond be lowered to $15,000.

On August 4, 1977, Mr. Weisberg, having been notified of the Brucars' August 3 motion, filed in the Cook County Circuit Court a Petition for Rule to Show Cause why the Brucars should not be held in contempt for failing to post the $44,065.35 bond ordered by Judge Trafelet. On August 7, Mr. Brucar met with his attorney to discuss the show cause petition and repeatedly asked his attorney to ensure the petition not be heard by Judge Kogut because of the latter's prejudice. A hearing on the petition was held on August 10, but upon advice of their attorney the Brucars did not appear. They do not know before whom the petition was heard.

Another hearing on the show cause petition was held on August 15, and the Brucars appeared at that time. Even though Judge Trafelet was present in court that day, Judge Kogut presided at the hearing. Because her attorney failed to object to the presence of Judge Kogut, Mrs. Brucar objected that Judge Kogut had been removed from the case and that the issue of the amount of the bond was properly before the Appellate Court. Judge Kogut's response was to order her to be silent upon pain of incarceration.

A third hearing was held on August 19, Judge Kogut again presiding. Upon advice of their attorney, the Brucars did not appear. At this hearing Judge Kogut found the Brucars in contempt of court for failure to post the $44,065.35 bond, ordered their arrest, and ordered that they execute a quit-claim deed of their home to Mr. Rubin's secretary, to be reconveyed upon their posting of the $44,065.35.

2. In July or August of 1976, Mr. Weisberg had approached Dora Weisberg's physician, asking him to declare her incompetent. The physician refused, informing Mr. Weisberg that in his opinion she was not incompetent.

The Brucars were arrested on August 21, 1977, and incarcerated in the Cook County Jail, where Mrs. Brucar, having been strip searched and body cavity searched, was attacked by other inmates. Mr. Brucar experienced "similar degradations." On August 22, 1977, the Brucars quit-claimed their home to Mr. Rubin's secretary and were thereupon released from custody.

The issue presented is whether the foregoing allegations state a claim for relief under 42 U.S.C. § 1983. For purposes of this appeal all well pleaded allegations must be taken as true and must be viewed in the light most favorable to the Brucars. *City of Milwaukee v. Saxbe*, 546 F.2d 693, 704 (7th Cir. 1976); *Black v. Brown*, 513 F.2d 652, 654 n.3 (7th Cir. 1975); *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969).[3]

To recover under § 1983, the plaintiffs must show that the defendants' acts operated to deprive them of their constitutional rights and that the defendants acted under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The defendants contend that the complaint fails to allege either of these elements adequately.

## I. *Due Process*

The Brucars contend that the orders entered by Judge Kogut on August 10, 15, 19, 22 and 23 were void as a matter of Illinois law and therefore resulted in deprivations of their liberty and their property without due process. The defendants argue the orders were valid.

We address first the Brucars' contention that Judge Kogut's orders were invalid because the Appellate Court had exclusive jurisdiction over the case as of August 3, the day the Brucars moved the Appellate Court to lower the supersedeas bond. We decline to accept this argument.

Stays of the enforcement of judgments pending appeal are governed by Illinois Supreme Court Rule 305 (Ill.Rev.Stat. ch. 110A § 305 (West Supp. 1980)). Rule 305(a) provides for an automatic stay upon the timely filing of a notice of appeal and posting of a supersedeas bond. Rule 305(b) provides for a discretionary stay, which may be granted by the trial court or the reviewing court upon motion. Both of these provisions stay the execution of a trial court's judgment. Neither provides for a stay of the trial court's order fixing the amount of the appeal bond, and we have found neither case nor statute that deals with stays of the latter sort.[4] The Brucars argue that Rule 305(f) should be construed to provide for an automatic stay of the appeal bond order. We think such a construction is unduly strained. By its terms, Rule 305(f) merely permits alteration of the terms of the supersedeas bond. The last phrase of the rule appears directed to cases in which the reviewing court increases the amount of the bond: in such cases, the appellant must post the additional amount or the stay of enforcement will be terminated, thus allowing the appellee to execute on the judgment immediately. It might well be desirable to decree that trial courts may not jail appellants for failure to post an appeal bond at a time when the appellants

---

**3.** This proposition is of long standing and defendants do not attempt to dispute it. We therefore admonish the defendants that, in light of this rule, they are not at liberty to play fast and loose with facts properly alleged in the Brucars' complaint. We note, for example, the defendants' contention at page 4 of their brief that the Brucars raised no objection to Judge Kogut's presiding over the August 15 contempt proceedings. This contention is in direct conflict with ¶ 36 of the Brucars' amended complaint. Similarly, since the Brucars allege, at ¶ 41 of their amended complaint, that they were not present on August 19, when Judge Kogut ruled them in contempt of court, the

defendants may not contend—as they do at page 5 of their brief—that the Brucars were present. We recognize the inclination of litigants to present the facts in the light most favorable to them. However, there is a line between zealous argument and outright disingenuity. That line should not be overstepped.

**4.** None of the cases cited by the parties in this context is in point. The defendants' cases involve the execution of judgments where appellants failed to obtain a stay under Rule 305(a) or (b). The Brucars' cases do not involve the enforcement of trial court orders at all.

are in the process of asking a higher court to reduce the amount of the bond, but that would be a matter of policy for the Illinois legislature to decide.[5] In the absence of any such provision, we are unwilling to hold that, as a matter of Illinois law, the trial court had no power to enforce its appeal bond order as it did.

We agree with the Brucars, however, that Judge Kogut's August orders were void because he had previously been removed from the case on grounds of prejudice.

Illinois permits transfer of venue for, among other reasons, judicial prejudice. Ill.Rev.Stat. ch. 146 § 1(2). The general rule, as stated in innumerable cases, is that where a transfer-for-prejudice motion is presented to the trial court in proper form and before the court has ruled on any substantive matter in the case, the motion must be granted, and any order entered thereafter by the transferor court is void. *E. g., In re Estate of Roselli*, 70 Ill.App.3d 116, 120–22, 26 Ill.Dec. 463, 388 N.E.2d 87 (1979); *Delta Oil Co. v. Arnold*, 66 Ill. App.3d 375, 381, 23 Ill.Dec. 389, 384 N.E.2d 25 (1978); *City of Peoria v. Peoria Rental, Inc.*, 61 Ill.App.3d 1, 3, 18 Ill.Dec. 257, 377 N.E.2d 546 (1978); *Pavlis v. Jewel Tea Co.*, 53 Ill.App.3d 287, 289, 11 Ill.Dec. 168, 368 N.E.2d 719 (1977); *Frede v. McDaniels*, 37 Ill.App.3d 1053, 1055, 347 N.E.2d 259 (1976); *Stark v. Roussey & Assoc., Inc.*, 5 Ill.App.3d 665, 668, 284 N.E.2d 24 (1972). Most of the cases dealing with this issue involve appeals by transfer movants from adverse rulings entered after an erroneous denial of the motion to transfer.[6] The present case stands in a somewhat different posture. Here the adverse rulings were entered after a presumably proper *grant* of the motion by the transferor judge. This case is in that

sense very similar to *People ex rel. Anders v. Burlington Northern, Inc.*, 31 Ill.App.3d 1001, 335 N.E.2d 102 (1975). In *Anders*, the defendant won a change of venue on grounds of prejudice on October 31, 1969. Following hearings on November 9 and 27, the transferor judge—that is, the allegedly prejudiced judge—entered his order against the defendant on November 29, 1969. The Appellate Court reversed, holding that the transferor judge was without power, once the motion had been filed, "to render any further order except in connection with the order allowing the change of venue." *Id.* at 1004. *Chrysler Credit Corp. v. M.C.R. Leasing Co.*, 114 Ill.App.2d 43, 251 N.E.2d 648 (1969), is to the same effect. In *Chrysler Credit*, a transfer-for-prejudice motion was granted, but in the same order the transferor judge issued a temporary injunction against the movant. Later the transferee judge upheld, but modified, the injunction. The Appellate Court held that the initial injunction was void because upon the filing of the transfer motion the transferor judge had power solely to rule on the motion.[7]

The defendants argue that broad language of cases such as *Chrysler Credit* and *Anders* does not apply here because the Brucars waived their transfer rights. This argument has no merit. The allegations of the complaint state explicitly that Mrs. Brucar objected in open court to Judge Kogut's presiding over the contempt proceedings. The failure of the Brucars' attorney to object is therefore immaterial. The general rule is that a client is bound by the in-court decisions of his attorney unless he objects to them. *E. g., People v. Kaprelian*, 6 Ill.App.3d 1066, 1071, 286 N.E.2d 613, cert. denied *sub nom. Kaprelian v. Illinois*, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1972). This rule derives from a recognition that the attorney-client relationship is es-

---

**5.** It might also seem desirable to preclude the jailing of appellants for failure to pay an award of damages at a time when the award is on appeal. Yet this is permitted under Illinois law. *Shapiro v. Shapiro*, 113 Ill.App.2d 374, 252 N.E.2d 93 (1969) (ten-day jail sentence for contempt against husband for failure to pay $7,000 back alimony award, while award was on appeal, held proper).

**6.** All the cases previously cited in the text are in this category.

**7.** The injunction was upheld, however, as a *de novo* ruling of the transferee judge.

sentially that of agent and principal; and while an attorney's legal expertise gives him considerable latitude to act on behalf of his client, he may not act in direct contradiction to his client's instructions, and the client will not be bound by acts of his attorney from which he explicitly dissents. *Stevens v. Kasten*, 383 Ill. 127, 135, 48 N.E.2d 508 (1943); *People v. Santa*, 36 Ill. App.3d 289, 295, 343 N.E.2d 512 (1976); *People v. Nichols*, 27 Ill.App.3d 372, 382–83, 327 N.E.2d 186 (1975), *aff'd* 63 Ill.2d 443, 349 N.E.2d 40 (1976); *Chiapetti v. Knapp*, 20 Ill.App.3d 538, 314 N.E.2d 489, 492–93 (1974); *People v. Smith*, 10 Ill.App.3d 61, 64, 293 N.E.2d 465 (1973). Accordingly, Mrs. Brucar's objection to the August 15 hearing should not be considered "immaterial" (Def. Br. at 10 n.*). To the contrary, it is crucial. Her action, coupled with Mr. Brucar's express instructions to their attorney to object should the case be assigned to Judge Kogut, demonstrate that the Brucars were vigorously opposed to any waiver of

their transfer rights. They are not bound by their attorney's silence.[8]

We therefore conclude that Judge Kogut's orders, pursuant to which the Brucars were jailed and forced to quit-claim their home to Mr. Rubin's secretary, were void as a matter of Illinois law. The issuance and execution of such orders violated the Brucars' constitutional rights.

## II. State Action

Our finding of a constitutional violation necessitates consideration of the second element in a § 1983 suit, the state action requirement.

Unquestionably the involvement of the state court judge in the alleged violations of the Brucars' rights establishes state action for purposes of § 1983. *Shelley v. Kraemer*, 334 U.S. 1, 14, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948).[9] The question here is whether, in asking Judge Kogut to act as he did, these defendants can be said to have acted "under color of state law."[10]

---

8. In any event, we do not find the cases cited by the defendants applicable to the case at bar. In both *Balaszek v. Blaszak*, 405 Ill. 36, 89 N.E.2d 796 (1950) and *Musolino v. Checker Taxi Co.*, 110 Ill.App.2d 42, 249 N.E.2d 150 (1969), the transfer movants *prevailed* before the judge whom they alleged to be prejudiced against them. Other parties (in *Balaszek*, the movant's co-defendants; in *Musolino*, the opposing side) then attacked the transferor judge's orders as void, even though they had never accused the judge of prejudice against them. Neither the Illinois Supreme Court nor the Appellate Court was willing to permit such abuse of the transfer statute. Although these cases do speak of waiver, they seem to establish a standing rule rather than a rule of waiver. That is, only the party who has alleged that the trial judge is prejudiced against him may raise the issue of transfer on appeal.

That is not to say that a transfer movant can never waive his transfer rights. But while waiver may be possible, we have found no case in which it has precluded the movant's assertion of his own transfer rights on appeal. Thus, for example, in *Anders, supra*, the movant evidently participated in the post-transfer hearings before the transferor judge. It is not clear whether he objected at that time, and the issue of waiver was never broached.

Moreover, even the waiver language in *Balaszek* and *Musolino* is hedged:

While the trial court should not proceed to hear the cause against one who has made an

affidavit that the chancellor is prejudiced, *yet where a cause has been pending for a long time and the change of venue overlooked*, it is the duty of the objecting party to call the attention of the court to the fact that there has been a change of venue granted.

*Balaszek*, 405 Ill. at 41, 89 N.E.2d 796 (emphasis added). In similarly conditional language, the *Musolino* court stated: "if a party asks for a change of venue and it is erroneously denied, the party seeking it may waive his rights *by not asking afterwards to have the judgment vacated.*" *Musolino*, 110 Ill.App.2d at 47, 249 N.E.2d 150 (emphasis added).

We believe the Illinois courts would be reluctant to find that a movant has waived his transfer-for-prejudice rights. Accordingly, if there were any doubt whether the Brucars waived their objection to the contempt hearings, we would resolve such doubt in favor of the Brucars.

9. "That the action of State courts and judicial officers in their official capacities is to be regarded as an action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this court." *Shelley v. Kraemer, supra*, 334 U.S. at 14, 68 S.Ct. at 842.

10. The Brucars rely, erroneously, on *Shelley v. Kraemer, supra* note 9, to answer this question in the affirmative. *Shelley* stands for the prop-

In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court reaffirmed the rule that " '[p]rivate persons jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.' " *Id.* at 152, 90 S.Ct. at 1605 (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966)). The "joint activity" involved in *Adickes* was between private individuals and a police officer. In *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979), the Seventh Circuit added strict pleading requirements to the *Adickes* rule where the "joint activity" is between private individuals and a state court official. The impact of *Sparkman* on the present case is that the Brucars' complaint will not be dismissed for insufficiency under Federal Rule of Civil Procedure 12(b)(6) if their allegations of conspiracy between Judge Kogut and the defendants are adequately specific. The exact degree of detail needed under *Sparkman*, of course, has not yet been fully defined; in this case, however, we think the Brucars have met the *Sparkman* test.

The Brucars make five allegations in particular that are sufficient to raise the reasonable inference that Judge Kogut acted in violation of their due process rights because he was corrupted by the defendants. The first and most serious allegation is that Judge Kogut was in private conference with Mr. Rubin just moments before the hearing on Dora Weisberg's competency. This *ex parte* conference was followed immediately by Judge Kogut's summary finding of incompetency without taking any evidence at all—without, indeed, even bothering to question Dora Weisberg, the alleged incompetent—and his summary appointment of Mr. Weisberg as conservator. Taken separately, neither the *ex parte* conference nor the summary rulings necessarily show a conspiracy. But taken together they do acquire suggestive overtones.

The Brucars further contend that the ease with which Mr. Rubin was able to maneuver the August 1977 contempt proceedings into Judge Kogut's courtroom suggests that Judge Kogut must have played an active role in this maneuver. This suggestion is buttressed by the allegation of the manner in which Judge Kogut rebuffed Mrs. Brucar's objection to the proceedings: rather than merely overrule the objection, he threatened to imprison Mrs. Brucar for raising it.[11] Concededly, none of these alleged facts is conclusive—or even direct—evidence of a conspiracy between the judge and Messrs. Weisberg, Rubin and Juron. Nonetheless, they do constitute the "overt acts ... reasonably related to the promotion of the claimed conspiracy"[12] the allegation of which was found lacking in *Hansen v. Ahlgrimm*, 520 F.2d 768 (7th Cir. 1975), and in the other cases cited in *Sparkman*, 601 F.2d at 265–66 (Sprecher, J., concurring).

However strict its pleading requirements may be, *Sparkman* does not require proof at the pleading stage. Conspiracies are ordinarily clandestine, so that proof of them will often be by purely circumstantial evidence. We believe a fact finder could reasonably conclude on the basis of the Brucars' allegations, "not only that the private party used the state court proceedings to produce a constitutional wrong, but that there was agreement between the party

---

osition that the Fourteenth Amendment may be used as a shield to protect individuals against state court enforcement of unconstitutional laws or of private covenants that would operate to violate the constitutional rights of others. From this it does not automatically follow that § 1983 may be used as a sword to obtain money damages against litigants who petition courts to enforce laws or agreements ultimately found unconstitutional.

11. Two inferences may reasonably be drawn from the judge's brusqueness: either Mrs. Bru-

car's objection was so obviously frivolous that it required no explanation, or it was so obviously meritorious that it could not be explained away. A fact finder could reasonably conclude that Judge Kogut was familiar with Illinois law and therefore must have known that Mrs. Brucar's objection on grounds of the prior transfer was obviously meritorious.

12. *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975).

and judge beyond ordinary request and persuasion by the prevailing party, and that the state court judge invidiously used his office to deprive the § 1983 plaintiff of a federally protected right." *Sparkman, supra* 601 F.2d at 262 (Fairchild, Chief Judge, concurring). We hold, therefore, that the Brucars' allegations of conspiracy between Judge Kogut and the defendants are sufficiently specific to state a claim of state action under § 1983.

Because the Brucars' complaint adequately alleges both a violation of their constitutional rights and the necessary conspiracy, the dismissal of their claim is reversed, and the case is remanded for further proceedings.