Harry W. CAPLAN, Susan Stauffer, Guardian Ad Litem for Tommy Caplan, a Minor, Plaintiffs,

v.

Trudi ROSEMAN, f.k.a. Trudi Caplan, David Roseman, Police Officer Gary L. Zajc, Police Officer James W. Lindsay, Jr., Stephen Toth, etc., City of Pepper Pike, Defendants.

No. C85–3066.

United States District Court, N.D. Ohio, E.D.

Aug. 18, 1987.

Lawrence J. Rich, Carl C. Monastra, Zashin, Rich & Sutula Co., L.P.A., Susan Stauffer, Guardian Ad Litem, of Legal Aid, Cleveland, Ohio, for plaintiffs.

Henry A. Hentemann, Jr., Meyers, Hentemann, Schneider & Rea, Charles K. Webster, Maureen A. Gravens, Reid, Johnson, Downes, Andrachik & Webster, Cleveland, Ohio, for defendants.

## MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KRENZLER, District Judge.

The plaintiff, Harry W. Caplan ("Caplan"), commenced the instant action on behalf of himself and his son, Tommy Caplan ("Tommy")[1], pursuant to 42 United States § 1983, alleging the deprivation of their constitutional rights under color of state law. The defendants named in the complaint include Trudi Roseman, Tommy Caplan's mother; David Roseman; Pepper Pike Police Officers Gary L. Zajc and James W. Lindsay, Jr.; the Pepper Pike Police Department; Chief of Police Stephen Toth; and the City of Pepper Pike, Ohio.[2] The primary thrust of the complaint is based on the allegations that on June 20, 1985, Caplan was unreasonably denied his right to visitation with Tommy when the defendant police officers appeared at Caplan's residence, prevented him from leaving with his son, and removed Tommy from the premises, "all under color of the law and without any direct or indirect authority or official order to do so." Complaint, ¶ 14. The plaintiff also brought several pendent state law claims.

Pending before the Court in the instant case is the defendants City of Pepper Pike, Gary Zajc, James Lindsay, Jr., and Stephen Toth's motion for summary judgment, pursuant to Fed.R.Civ.P. 56. Both the plaintiffs and the defendants have filed briefs in support of their respective positions.

The defendants' motion for summary judgment came on for a hearing on August 4 and 5, 1987. At the hearing, the parties engaged in oral argument, and presented testimony and evidence concerning whether Officers Zajc and Lindsay were entitled to qualified immunity.

Under Rule 56, summary judgment is rendered for the movant only if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, "the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp.,* 303 F.2d 425, 427 (6th Cir.1962). "The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently." *Watkins v. Northwestern Ohio Pullers Association, Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980). For the reasons provided below, the Court grants the defendants' motion for summary judgment.

### I.

A review of the pleadings, depositions, exhibits, and hearing testimony reveals the following facts. At 9:46 a.m. on June 20,

---

1. The Court subsequently appointed Susan Stauffer as guardian ad litem for Tommy Caplan in this matter. *See* Order overruling defendants' motion to dismiss and granting plaintiffs' motion to appoint guardian ad litem (December 8, 1986).

2. The plaintiffs subsequently voluntarily dismissed the Pepper Pike Police Department as a defendant. *See* Court's Marginal Entry Order of January 23, 1987.

1985, a dispatcher at the Pepper Pike Police Department was contacted by telephone by a person identifying himself as David Roseman. Mr. Roseman indicated that he was calling concerning the welfare of Tommy Caplan, the son of his wife, Trudi Roseman. Mr. Roseman stated that he had learned that Harry Caplan intended to remove Tommy from the State of Ohio without authority to do so and in violation of a visitation schedule then in effect in the divorce action which had terminated the marriage of Trudi Roseman and Harry Caplan.

The defendant police officers, Zajc and Lindsay, were dispatched to the residence of Harry Caplan and arrived there at 9:51 a.m. Upon their arrival at the Caplan residence, the officers found Caplan and Tommy preparing to leave the residence in a motor vehicle. The officers prevented the departure of the plaintiff by blocking the driveway with their police vehicle.

Officers Zajc and Lindsay approached the plaintiff's vehicle. After identifying himself and Tommy, Caplan informed the defendant officers that he and his son were on their way to Hopkins Airport to begin a trip to California. The officers stated that the plaintiffs would not be permitted to leave until they were satisfied that Caplan had the right to take his son on the trip to California.

Caplan then indicated that he was in possession of court papers that entitled him to remove his son from the State of Ohio and that he would show these papers to the officers. The officers entered the home with Caplan to view the court papers in question. The defendant officers examined a number of legal documents, including an Amended Journal Entry in *Caplan v. Caplan*, Case No. 81 D–120174 (Cuyahoga County Court of Common Pleas, Division of Domestic Relations August 11, 1982). The Amended Journal Entry provided, in relevant part: "Harry shall have two (2) weeks visitation with Tommy each summer at a mutually agreed upon time." Amended Journal Entry, Plaintiff's Hearing Exhibit 1, at 1.

After examining the voluminous number of legal documents and discussing the matter with Caplan, the officers still were not convinced that Caplan had the right to remove Tommy from the State of Ohio. Caplan then stated he would like to call his attorney on the phone and have him explain the terms of the visitation schedule to the officers. Since Caplan's phone was out of order, Officers Zajc and Lindsay stated that he should go to the Pepper Pike Police Station and use the phone at that location. Caplan then left the residence. The officers did not allow Caplan to take Tommy with him to the police station to make the call.

Within a few minutes, Caplan returned to the residence and declared, "I am taking my son, you have no right to stop me." Deposition of Harry Caplan, p. 112. At this point, Caplan stepped toward his son and there was some physical contact between Caplan and at least one of the officers. Caplan became agitated and was held to the floor by defendants Zajc and Lindsay until he calmed down. After Caplan calmed down, he was advised again to go to the Pepper Pike Police Station to contact his attorney. Caplan left his home a second time.

The officers then contacted the dispatcher, who called Mrs. Roseman and told her to pick up Tommy at the Caplan residence. While Caplan was at the Pepper Pike Police Department, the Rosemans arrived and took Tommy from the Caplan residence. The officers left the premises at 10:15 a.m., prior to the time Caplan returned.

There was no further contact between the defendant officers and the plaintiff. Caplan subsequently left for California without Tommy.

## II.

In their motion for summary judgment, the defendant officers, Lindsay and Zajc, argue that they are entitled to the objective good faith defense of qualified immunity from the plaintiffs' § 1983 claims. Furthermore, the defendants City of Pepper Pike and Police Chief Stephen Toth argue that they are entitled to summary judg-

**552**

ment in their favor because there exist no facts from which their participation could be inferred in any alleged constitutional deprivation. In addition, they argue that the plaintiffs have not met the requirements for stating a claim for relief under the standard for liability of supervisory personnel and governmental entitites, as set forth in *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The instant matter is a § 1983 case growing out of a domestic relations situation involving custody and visitation rights. This type of case must be distinguished from the more typical domestic relations situation involving domestic violence. Police officers are better suited to deal with domestic relations situations involving domestic violence.

In the complaint, Harry Caplan alleges that the actions of the defendants violated his liberty interest in the custody of his child, Tommy. Domestic relations cases involving the custody of a child, such as the present case, generally consist of a three-cornered arena. Two corners are comprised of the disgruntled former marital partners fighting over the custody of their child. The third corner consists of the police officers who are innocently thrust into the midst of this venemous situation.

Under these circumstances, police officers are placed in a practically no-win position. If the officers do not take any action, the complaining parent accuses them of wrongdoing. If the officers do take action, the parent deprived of the immediate custody of his or her child accuses them of wrongdoing.

Whether a police officer is protected by qualified immunity for an alleged unlawful official action generally turns on the "objective legal reasonableness" of the action, *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), assessed in light of the legal rules that were "clearly established" at the time it was taken, *id.* at 818, 102 S.Ct. at 2738. *See also Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Harlow*); *Malley v. Briggs*, 475

U.S. 335, 341, 106 S.Ct. 1092, —, 89 L.Ed.2d 271 (1986) (stating qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To find that police officers are entitled to qualified immunity, it is not necessary for a court to examine the merits of a § 1983 claim and determine whether the police officers actually violated a plaintiff's constitutional rights. Police Officers are shielded from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Creighton*, — U.S. —, —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523. If a court finds that police officers are entitled to qualified immunity, the § 1983 action is over, at least as to the claims against the officers granted qualified immunity.

To determine whether qualified immunity exists, a court must examine all the facts and circumstances of a case. In the present case, it is obvious to this Court that the entire unfortunate incident was wrongfully initiated by Caplan's former wife and her current husband by placing a call to the Pepper Pike Police Department. The Rosemans' call, informing the Pepper Pike Police that Harry Caplan intended to remove Tommy from the State of Ohio "without authority" and "in violation of a visitation schedule," triggered the events which led to the alleged deprivation of the plaintiffs' constitutional rights.

Upon receiving the Rosemans' call, the dispatcher at the Pepper Pike Police Department sent Officers Zajc and Lindsay to the Caplan residence and advised them of the alleged wrongful taking of Tommy. As the officers arrived at the Caplan resident, they noticed the plaintiffs preparing to leave in a motor vehicle. The officers therefore blocked the driveway with their police vehicle.

This Court concludes that once the dispatcher sent the defendant officers to the Caplan residence, they had a duty to proceed to the Caplan home and investigate the Rosemans' call. This Court further finds that the defendant officers acted reasonably in blocking the driveway and pre-

venting the plaintiffs from leaving in Caplan's automobile. Based on the information provided by the dispatcher, reasonable police officers would have attempted to prevent the plaintiffs from leaving until they were satisfied that Caplan had not wrongfully taken his son.

After arriving at the Caplan residence, Officers Zajc and Lindsay approached Caplan and questioned him concerning his custody of Tommy. When the officers did not appear satisfied with Caplan's explanation that he had the right to two weeks visitation, Caplan invited the officers into his house to view various court documents concerning Caplan's custody and visitation rights. Defendants Zajc and Lindsay accepted the plaintiff's offer to view the court documents and entered Caplan's house with the plaintiff.

Given the serious nature of the Rosemans' complaint, this Court concludes that the officers acted reasonably by not simply accepting Caplan's word that he had legal custody of Tommy, and by requesting further documentation. The defendants properly entered the plaintiff's home, with his permission, to view various court documents.

Once inside the house, the officers were shown sheaves of paper, including the Amended Journal Entry providing Caplan with two weeks visitation with Tommy each summer at a time mutually agreed upon with his wife. See Plaintiff's Hearing Exhibit 1. While the officers were present inside the Caplan house, Caplan left the premises twice to use the telephone at the Pepper Pike Police Department to call his attorney. In both instances, the defendant officers refused to permit Caplan to take his son with him. Such refusal was appropriate under the circumstances surrounding this incident: a police officer in this situation could reasonably have thought Caplan would take Tommy to the airport if permitted to leave with his son.

Within a short time after leaving for the Pepper Pike Police Department the first time, Caplan returned to his home in an agitated state. After some physical contact between Caplan and at least one of the officers, the plaintiff was held to the floor by defendants Zajc and Lindsay until he calmed down. After Caplan calmed down, the officers released the plaintiff, who then proceeded to the police department a second time to call his attorney.

Under the circumstances in this case, the Court understands the plaintiff's frustration at not being able to take his son immediately to the airport. However, this Court finds that Officers Zajc and Lindsay properly delayed the plaintiffs to investigate the Rosemans' complaint, and used only an amount of force necessary and reasonable to calm Caplan down.

After Caplan left the house a second time, the defendant officers radioed the dispatcher. The dispatcher then called Mrs. Roseman and told her to pick up Tommy at the Caplan residence. Once Tommy was back in the custody of Mrs. Roseman, Officers Zajc and Lindsay left the Caplan residence.

Under the facts and circumstances of this case, this Court concludes that Officers Zajc and Lindsay acted in a reasonable manner when they returned Tommy to his mother after Caplan left for the police department a second time.

Upon review of the court orders while in Caplan's house, the police officers were able to discern the following facts. First, Mrs. Roseman had permanent custody of Tommy. Second, Caplan was entitled to "two (2) weeks *visitation* with Tommy each summer at a *mutually agreed upon* time." Amended Journal Entry, Plaintiff's Hearing Exhibit 1 (emphasis added). The officers testified, however, that they were unsure as to whether a visitation included a vacation. Thus, the officers were in a quandry as to whether they should let Caplan take his son out of the State of Ohio on a vacation to California.

Officers Zajc and Lindsay had at least three choices before them. First, the defendants could have simply allowed Caplan to take Tommy to California. Second, the defendants could have attempted to maintain the status quo, bring all the parties together, and determine which parent was entitled to the custody of Tommy. Third,

the defendants could have prevented Caplan from taking Tommy to California, returned the child to the mother who has permanent custody, and then allowed the parties to resolve the visitation issue among themselves.

In the instant case, the defendant officers chose the third course of action. Thus, this Court is called upon to determine whether this choice is entitled to qualified immunity.

Police officers are not required under § 1983 to be guarantors of rights of visitation in domestic relations situations. They are not the ultimate umpires in custody disputes where they must obtain all the available information, weigh all the possible choices, and arrive at the correct solution. This task has been left for the courts.

Instead, police officers in domestic relations situations must make spontaneous decisions based on incomplete, and sometimes inaccurate, information. All § 1983 requires in these matters is for police officers to act reasonably and to do the best job possible under difficult circumstances.

In the present case, the defendant officers wanted to be satisfied that Caplan had the legal right to the custody of Tommy before letting him take his son to California. Caplan showed the officers an Amended Judgment Entry indicating he had the right to two weeks visitation each summer. However, under this court order, the particular two weeks had to be *mutually agreed upon*. The only way to have a mutual agreement was for Mrs. Roseman to agree with Caplan on the specific dates he could take Tommy. Since the Rosemans made the initial call and complained that Caplan had wrongfully taken Tommy, it was reasonable for Officers Zajc and Lindsay to infer that Caplan's trip to California with Tommy had not been mutually agreed upon.

After arriving at the Caplan residence, the defendant officers were faced with conflicting stories and a child about to be taken out of the state. The safe decision for defendants Zajc and Lindsay was to place the child with the parent who had permanent custody, and then allow the parents to battle over visitation rights. If it develops the mother wrongfully interferred with the father's visitation rights, the better solution for the father would be to return to the domestic relations court and have the mother cited for contempt, rather than to bring a § 1983 action against the police officers. Police officers innocently drawn into custody battles should not be held liable for money damages under § 1983 when they act reasonably in these difficult situations.

Upon consideration of all the facts and circumstances of this case, this Court concludes that Officers Zajc and Lindsay are entitled to qualified immunity. The fact that these officers may have had better alternatives before them—such as choices one and two above—does not mean that they did not act reasonably under the circumstances. Police officers should not be called upon to adjudicate visitation rights squabbles; this task should be left for the courts. Accordingly, summary judgment shall be granted in favor of defendants Zajc and Lindsay and against the plaintiffs.

Upon further consideration, this Court also concludes that defendants City of Pepper Pike and Police Chief Stephen Toth are entitled to summary judgment on the plaintiff's § 1983 claims. The plaintiffs have not met the requirements for stating a claim for relief under the standard of liability of supervisory personnel and governmental entities, as set forth in *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

In their complaint, the plaintiffs allege that defendants City of Pepper Pike and Police Chief Toth "were negligent in the selection, appointment, training, supervision, and retention of the Defendant Officers as members of the Defendant City of Pepper Pike Police Department." Complaint, ¶ 19. The plaintiffs further allege that these defendants "appointed said Defendant Officers when they knew, or in the exercise of reasonable care, should have known of the disposition of said Defendant

Officers to act unreasonably and without due regard for the right and privileges of the Plaintiffs herein." Complaint, ¶ 20.

 In actions brought pursuant to 42 U.S.C. § 1983, the liability of supervisory personnel and governmental entities must be based upon more than merely the right to control employees. *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir. 1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1983). The Supreme Court rejected the doctrine of *respondeat superior* as a basis for liability under § 1983 in *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court stated in *Monell* that "the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Id.* at 694 n. 58, 98 S.Ct. at 2037 n. 58. *See also Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976).

In civil rights cases, the failure of supervisory officials to supervise, control, or train offending individual officers is not actionable absent a showing that the official either "encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays,* 668 F.2d at 874. "At a minimum, a plaintiff must demonstrate that the supervising official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* There must be a direct casual link between the acts of individual officers and the supervisory defendants. *Rizzo,* 423 U.S. at 370–71, 96 S.Ct. at 603–04.

In the instant case, the plaintiffs have failed to demonstrate that Police Chief Toth directly participated in the incident in question. Additionally, defendant Toth has stated, by way of affidavit, that he was not aware and has never been aware of "any disposition of Officers Zajc or Lindsay to act unreasonably or without due regard for the rights of any citizen." Affidavit of Stephen A. Toth, attached to defendants' motion for summary judgment. The plaintiffs have not submitted any evidentiary material to refute the statements in Police Chief Toth's affidavit.

 Section 1983 is available to redress constitutional violations that result directly from a municipal policy or custom. *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Sixth Circuit has held that a police department's failure to adequately train its police personnel may constitute a custom or policy for the purpose of finding municipal liability under § 1983. *Rymer v. Davis,* 754 F.2d 198 (6th Cir.), *vacated on other grounds sub nom. City of Shepardsville v. Rymer,* 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646 (1985). However, a supervisory official or a municipality may be held liable "only where there is essentially a complete failure to train the police force, or training is so reckless or grossly negligent that future police misconduct is almost inevitable ... or would be characterized as substantially certain to result." *Hays,* 668 F.2d at 874.

The affidavit of Police Chief Toth states that Officers Zajc and Lindsay received basic police training at a school certified by the Ohio State Highway Patrol in accordance with the mandates of Ohio law, prior to the incident in question. Police Chief Toth further states in his affidavit that at the time of the incident at the Caplan residence neither the City of Pepper Pike nor its police department had promulgated any policy, written or unwritten, "which directed or allowed police officers to deprive any citizen of rights secured to that citizen by the Constitution or laws of the United States." *Id.* The plaintiffs have failed to submit any evidentiary material to refute these statements of Police Chief Toth.

This Court holds that the plaintiffs' allegations of inadequate supervision and training do not rise to the level of a constitutional tort for which damages are recoverable under § 1983. As mentioned above, domestic relations situations generally can be broken down into two categories: those involving domestic violence, and those involving custody and visitation disputes between parents. While this Court concurs with the plaintiffs that police officers

should undergo some special training concerning the handling of domestic violence cases, this Court does not agree that municipalities must provide police officers with special training concerning custody and visitation rights. The type of problems arising out of custody and visitation disputes generally can be solved through a police officer's use of his common sense and his knowledge derived from his basic police training. Since both Officers Zajc and Lindsay received basic police training at a certified school in accordance with applicable Ohio law, this Court concludes that defendants City of Pepper Pike and Police Chief Toth are entitled to summary judgment in their favor on the plaintiff's § 1983 claims against them.

### III.

■ Having granted summary judgment in favor of defendants Zajc, Lindsay, Toth and the City of Pepper Pike, this Court notes that the sole remaining defendants in this case are Trudi and David Roseman. In their complaint, the plaintiffs allege that the Rosemans "acted in concert" with the other named defendants to deprive them of their constitutional rights. Complaint, ¶ 16. In their answer, the Rosemans assert as their first affirmative defense that the plaintiffs have failed to state a claim against them upon which relief can be granted. For the reasons provided below, the Court finds the defendants' first affirmative defense to be meritorious.

To maintain a § 1983 action, a plaintiff must demonstrate that a constitutional right was violated and that this violation occurred under the color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1980). Private parties have been found subject to liability under § 1983 when engaged in a conspiracy with one or more parties acting under the color of state law. *See, e.g., Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir.1985); *Brucar v. Rubin*, 638 F.2d 987 (7th Cir. 1980).

In *Adickes*, the Supreme Court explained how a private party can be liable under § 1983:

> The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of the petitioner's Fourteenth Amendment equal protection rights whether or not the actions of the police were officially authorized, or lawful.... Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983.

398 U.S. at 152, 90 S.Ct. at 1605. To establish a conspiracy, the plaintiff must demonstrate that the state officials and the private parties reached an understanding to deprive the plaintiffs of their constitutional rights. *See id.; Moore*, 754 F.2d at 1352.

Upon review of the complaint, this Court finds that the plaintiffs have failed to state a claim upon which relief can be granted against the Rosemans. Here the only allegation concerning the Rosemans, aside from the conclusory statement that they "acted in concert" with the other defendants, is that the defendant officers appeared at the Caplan resident "upon the request and direction of the Defendant Roseman's [sic]." Complaint, ¶ 29. Calling in a complaint to a police department, however, is not, by itself, sufficient to state a claim against private parties under § 1983. To sustain a § 1983 action against private individuals, there must be some evidence of some concerted effort or plan between the private parties (i.e. the Rosemans) and the state officials (i.e. the police officers). *See Moore*, 754 F.2d at 1352–53.

An examination of the pleadings, motions, exhibits and hearing testimony does not reveal any facts to support a theory that a conspiracy existed between the Rosemans and the other named defendants to violate the plaintiffs' constitutional rights. While it is obvious to this Court that the Rosemans' call triggered the incident in question, any wrongdoing they did will have to be addressed in a domestic relations case.

Accordingly, the Court *sua sponte* dismisses the plaintiffs' claims against the Rosemans for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## IV.

For the reasons provided above, the Court grants the defendants' motion for summary judgment. Summary judgment shall be entered in favor of the defendants Gary L. Zajc, James W. Lindsay, Jr., Stephen Toth and the City of Pepper Pike and against the plaintiffs on the plaintiffs' § 1983 claims. Furthermore, the Court *sua sponte* dismisses the plaintiffs' § 1983 claims against the defendants Trudi Roseman and David Roseman for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Since no federal claims remain, the Court declines to exercise its pendent jurisdiction over the pending state law claims and dismisses them, without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The plaintiffs shall pay costs.

IT IS SO ORDERED.